EDGAR MUNSON et al., Appellants, *v.* THE SYRACUSE, GENEVA AND CORNING RAILROAD COMPANY et al., Respondents.

A trustee may not, as such, purchase property in which he has an individual interest. The law, in such case, does not stop to inquire whether the transaction was fair or unfair, but, when the relation is disclosed, sets aside the transaction, or refuses to enforce it at the instance of the *cestui que trust.*

A corporation, in order to defeat a contract entered into by its directors on its behalf, in which one or more of them had a private interest, is not bound to show that the influence of the director or directors having the private interest determined the action of the board.

The promoters of a corporation do not represent it in any relation of agency, and have no authority to enter into preliminary contracts binding the corporation when it shall come into existence, and, if its sanction to such a contract is obtained by the act or co-operation of a director who has a private interest, it may resist an action for specific performance, at least in a case where it has not accepted the consideration or taken the benefit of the contract.

Plaintiffs were the owners of nearly the whole of an issue of mortgage bonds made by the S. B. & C. R. R. Co. Said corporation having become insolvent and having abandoned the enterprise of constructing its road, plaintiffs entered into a contract with defendant Magee, which recited that Magee represented persons and interests proposing to organize another railroad company. By the contract, plaintiffs agreed to foreclose the mortgage securing the bonds, to purchase the property covered by the mortgage on foreclosure sale, and to convey the same to Magee, or to the

company proposed to be organized. Magee agreed to deliver to plaintiffs, in payment for the property so conveyed, first mortgage bonds of the new company to an amount specified. A new company was organized, which contemplated building a road on substantially the same line as that of the old company, of which new company plaintiff Munson was president and a director. Its board of directors passed a resolution assuming the obligations of Magee and subsequently a new contract was made between it and plaintiffs, which substituted the company in place of Magee in the contract. Munson, as a director, participated in the meeting of the board at which the resolution was passed and, as its president, executed the new contract. The new company subsequently located an entirely new line upon which to build its road. Plaintiffs foreclosed the mortgage and purchased the property, which consisted of rights of way and a road-bed, partially graded over a portion of the route of the old company. *Held,* that an action to compel a specific performance of its contract by the new company was not maintainable ; that the right of the company to repudiate the contract was not affected by the fact that Munson's associates, the other plaintiffs, were not themselves disabled from contracting for it, or that Munson was but one of ten directors who voted in favor of the contract ; also *held,* that the case was not within the terms or the spirit and intent of the act of 1873 (Chap. 710, Laws of 1873), which authorizes the purchaser, on foreclosure of the property of a railroad corporation, to form a new corporation to operate the road.

*It seems* that an agreement on the part of a railroad corporation, made on the purchase of rights of way, to pay therefor in bonds of the corporation, secured by mortgage upon its property, is within its implied, if not within its express power. (Subd. 10, § 28, chap. 140, Laws of 1850.)

(Argued April 28, 1886; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made October 31, 1884, which affirmed a judgment in favor of defendants, entered upon the report of a referee.

This action was brought to compel the specific performance of a contract, the substance of which and the material facts are set forth in the opinion.

*Samuel Hand, Richard L. Hand* and *B. W. Huntington* for appellants. · The scheme embraced in the contract is such as is expressly authorized by the statutes which permit mortgagees of railroad property on foreclosure to become purchasers of and convey the same (Chap. 444, Laws of 1857), and the organiza-

tion of a new company by such purchasers, their assignees and associates. (Laws of 1854, chap. 282, § 1 ; Laws of 1873, chap. 469, § 1 ; Laws of 1873, chap. 710, § 1 ; *People* v. *Brooklyn, etc., R. R. Co.*, 89 N. Y. 75.) The contract is not void or against public policy by reason of any provision in it having a tendency to prevent or restrict competition at a public sale. (*Atchinson.* v. *Mallon*, 43 N. Y. 147, 151 ; *Jones* v. *Caswell*, 3 Johns. Cas. [2d ed.], note, p. 33 ; *Marsh* v. *Russell*, 66 N. Y. 288, 292 ; *People* v. *Stevens*, 71 id. 546 ; *Marie* v. *Garrison*, 83 id. 14 ; *Bellows* v. *Russell*, 20 N. H. 427 ; *Breslin* v. *Brown*, 24 Ohio, 164 ; *S. C.*, 15 Am. Rep. 627 ; *Cornell* v. *U. I. & E. R. R. Co.*, 61 How. Pr. 193 ; *Baume* v. *Drew*, 4 Den. 287 ; *Wicker* v. *Hoppock*, 6 Wall. [U. S.] 94 ; *Phippen* v. *Stickney*, 3 Metc. 384 ; *Garrett* v. *Moss*, 20 Ill. 549 ; *Smith* v. *Ullman*, 58 Md. 183 ; *Jones* v. *North*, 12 Eng. Rep. 826 ; *McKenna* v. *Bulger*, 30 Hun, 384.) The law will not presume a contract illegal or against public policy when it is capable of a construction which will make it consistent with the law, and that construction is to be preferred which will support rather than that which will avoid it. (*Ormes* v. *Dauchy*, 82 N. Y. 443, 448 ; *Curtis* v. *Gokey*, 68 id. 304 ; *Bigelow* v. *Benedict*, 70 id. 202, 204 ; *Harris* v. *Trowbridge*, 83 id. 92, 99.) The contract is not against public policy or otherwise void by reason of any fiduciary relations of Munson to the Sodus Bay and Corning Railroad Company. (*Duncomb* v. *N. Y., H. & N. H. R. R. Co.*, 84 N. Y. 190; *S. C.*, 88 id. 1; *Harpending* v. *Munson*, 91 id. 602, 654; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587 ; *Elliott* v. *Wood*, 45 N. Y. 71 ; *Van Cott* v. *Van Brunt*, 82 id. 535 ; *Atty.-Gen'l* v. *Great East. R. Co.*, 27 Eng. Rep. 672 ; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546 ; 40 Barb. 179 ; *Boerum* v. *Schenck*, 41 N. Y. 182 ; *Thomas* v. *Brownville, etc., R. R. Co.*, 108 U. S. 524 ; 2 R. S. 463, § 38 ; *Slee* v. *Bloom*, 19 Johns. 456 ; *Briggs* v. *Penniman*, 8 Cow. 387 ; *Bank of Columbia* v. *Atty.-Gen'l*, 3 Wend. 595 ; *Brandt* v. *Benedict*, 17 N. Y. 99 ; *Webster* v. *Turner*, 12 Hun, 264 ; *Kincaid* v. *N. Y., etc., Co.*, 80 N. Y. 599 ; *Losee* v. *Bullard*, 79 id. 404 ; *Mickles* v.

*Rochester City Bk.*, 11 Paige, 118, 128.)    The defendants are not entitled to be relieved from performance by reason of any fiduciary relations of Munson to the defendant company as director, president or otherwise. (*Bunge* v. *Koop*, 48 N. Y. 225; *Bates* v. *Rosekrans*, 23 How. 98; approved in *Clark* v. *Dillon*, 91 N. Y. 370; *Wright* v. *Delafield*, 25 id. 266; *E. L. Ass. Co.* v. *Cuyler*, 75 id. 515; *Hall* v. *U. S. Reflector Co.*, 30 Hun, 375; *Hudson* v. *Swan*, 83 N. Y. 552; *Southwick* v. *F. N. Bk.*, 84 id. 420; *Barnes* v. *Brown*, 80 id. 535; *Risley* v. *I. B. & W. R. R. Co.*, 62 id. 240.)    A majority of the directors constituted a quorum for the transaction of business, and the decision of a majority duly assembled is valid as a corporate act.    (1 R. S 600, § 6; *Butts* v. *Wood*, 37 N. Y. 317; *Coleman* v. *Second Ave. R. R. Co.*, 38 id. 201, 203–4; *U. P. R. R. Co.* v. *Credit Mobilier*, 135 Mass. 367; *Cole* v. *Boardman*, 123 id. 548; *H. R. Brewing Co.* v. *White*, 5 Mo. L. Bul. 19.) Those who have the largest interest in corporations may control them. (*Barnes* v. *Brown*, 80 N. Y. 537; *Van Cott* v. *Van Brunt*, 82 id. 540–1.)    The fact that Munson was president of the company added nothing to his fiduciary obligations.    Neither statute nor by-law of the company, so far as appears, conferred on him any authority or charged him with any duty beyond that of any other director. (Laws of 1850; General Railroad Law, chap. 140, §§ 1–6; Laws of 1854, chap. 282, § 1; Laws of 1857, chap. 444, § 1; Laws of 1873, chap. 469, § 1; Laws of 1873, chap. 710, § 1.) The fact that Munson, subsequent to the making of the contract, became a director and the president of the new company in no way relieves defendants from their obligations.    The question of the legality of a contract is to be determined with reference to the time when it was made.    (*Mayor, etc.*, v. *Norfolk R. Co.*, 30 Eng. L. & Eq. 133; *Hawks* v. *East. Counties R. Co.*, 15 id. 358; affirmed, 35 id. 8; Green's Brice's Ultra Vires, 494.) It will be presumed that the purpose of the contract, and that of forming the new corporation was lawful, unless the contrary distinctly appears. (*Nelson* v. *Eaton*, 26 N. Y. 410; *Mechanics' Bk'g Ass.* v. *S. V. S. & L. Co.*, 25 Barb. 420; *Farmers' L. &*

*T. Co.* v. *Curtis*, 3 Seld. 466.) Contracts preliminary to the formation of a corporation by persons acting in behalf of the corporation to be formed, if legitimate, are binding on the corporation when formed. . Such persons are the agents to bring the corporation into existence, the contracts are the means by which this is done, and the formation of the corporation is a ratification of the contracts. (*Hawks* v. *Eastern Co. R. Co.*, 15 Eng. L. & Eq. 358 ; *Lindsay* v. *G. N. R. Co.*, 19 id. 87 ; *Preston* v. *Liverpool, etc., R. Co.*, 7 id. 124 ; *Scottish, etc., R. Co.* v. *Stewart*, 3 McQ. 388, 416 ; *Mayor, etc.,* v. *Norfolk, etc., R. Co.*, 30 Eng. L. &. Eq. 120 ; *Lorrillard* v. *Clyde*, 86 N. Y. 384, 389 ; *Bommer* v. *Am. Spiral., etc., Co.*, 81 id. 468, 472, 473 ; *Whitney* v. *Wyman*, 101 U. S. 392 ; *Reformed Church* v. *Brown*, 29 Barb. 338 ; *Buffalo, etc., R. R. Co.* v. *Clark*, id. 338 ; *Supervisors* v. *Wisconsin, etc., R. R. Co.*, 121 Mass. 472 ; *Western R. R. Co.* v. *Babcock*, 6 Metc. 346, 354 ; *Lawson* v. *Milwaukee, etc., R. R. Co.*, 30 Wis. 597.) The contract in question was one which the defendants were fully empowered by law to make. (Laws of 1850, chap. 140, §§ 23, 28, subd. 10 ; Laws of 1857, chap. 444, § 1 ; Laws of 1873, chap. 469, § 1 ; Laws of 1873, chap. 710, § 1 ; *Farmers' Loan & T. Co.* v. *Curtis*, 3 Seld. 466 ; *Moss* v. *McCullough*, 7 Barb. 279 ; *Vose* v. *Cowdrey*, 49 N. Y. 336 ; *N. Y. S. L. & T. Co.* v. *Helmer*, 77 id. 64 ; *Whitney Arms Co.* v. *Benton*, 63 id. 62 ; *Woodruff* v. *Erie R. Co.*, 93 id. 608 ; *Railway Co.* v. *McCarthy*, 96 id. 267 ; *Thompson* v. *Lambert*, 44 Iowa, 236 ; *Hurd* v. *Green*, 17 Hun, 327, 344, 345 ; *Rome Savings Bk.* v. *Kramer*, 32 id. 270, 275, 276 ; *Barry* v. *Merchants' Ex. Co.*, 1 Sandf. Ch. 280, 289 ; *Curtis* v. *Leavitt*, 15 N. Y. 962 ; *LeGrand* v. *M. M. Ass.*, 80 id. 638.) The action is properly brought for a specific performance of the contract set forth in the complaint. (*Stuyvesant* v. *Mayor, etc.*, 11 Paige, 414, 426–7 ; *Malins* v. *Brown*, 4 Comst. 403 ; *White* v. *Schuyler*, 31 How. Pr. 38 ; *Cushman* v. *Thayer & Co.*, 71 N. Y. 365 ; *Johnson* v. *Brooks*, 93 id. 337.) The referee's deed to Munson, and his to the defendant company conveyed all the property, rights of way, franchises and inter-.

ests which were provided for by the contract. (*Riggs* v. *Purcell*, 66 N. Y. 193; *White* v. *Secor*, 25 Barb. 235; *Thompkins* v. *Hyatt*, 28 N. Y. 347.) The rule that a purchaser on forclosure sale may require a perfect title has no application to a case where he purchases only a limited interest and that is apparent either from the mortgage or otherwise. (*Brown* v. *Haff*, 5 Paige, 235, 245; *Mills* v. *Van Voorhes*, 23 Barb. 125; *Bates* v. *Delavan*, 5 Paige, 299, 306–7; *Winne* v. *Reynolds*, 6 id. 407, 414; *Boyd* v. *Schlissinger*, 59 N. Y. 301, 308; *Riggs* v. *Purcell*, 66 id. 193, 198–9.) A railroad mortgage executed at the inception of the undertaking, or to procure funds for the construction of the road, is intended only to cover titles and rights; as they are procured they become subject to the mortgage. (*Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 284; *Stevens* v. *Watson*, 4 Abb. Ct. App. Dec. 302; *Hulett* v. *Whipple*, 58 Barb. 224; *Dwight* v. *Newell*, 3 N. Y. 185; *Benjamin* v. *Elmira, etc., R. R. Co.*, 46 Barb. 411; *Shaw* v. *Bill*, 95 U. S. 10, 15, 16.) The plaintiffs' right of action did not depend upon their ability at all times to perform, unless at least the defendants were ready. In actions for specific performance of contracts for purchase of land it is often sufficient if vendor is able to make title at the time of the decree. The tender of a deed is not a condition precedent. (*Welles* v. *Smith*, 7 Paige, 22; *Pierce* v. *Nichols*, 1 id. 244; *Brown* v. *Haff*, 5 id. 235; *Dutch Church* v. *Mott*, 7 id. 77; *Viele* v. *T. & B. R. R. Co.*, 21 Barb. 381; affirmed, 20 N. Y. 184.) The defendants can take no advantage of plaintiffs' delay unless they have shown themselves ready. (*Mech. Bk.* v. *Thomson*, 53 N. Y. 7, 12, 13; *Laird* v. *Smith*, 44 id. 618; *Stevenson* v. *Maxwell*, 2 Comst. 408; *Van Campen* v. *Knight*, 63 Barb. 205; *Hubbell* v. *Van Schonig*, 49 N. Y. 326, 331; Adams' Eq. 88; *Leslie* v. *Ins. Co.*, 63 id. 33; *Meyer* v. *Ins. Co.*, 73 id. 516; *Wiswell* v. *McGowan*, 1 Hoff. Ch. 125, 139; Fry on Spec. Perf. 308 [Am. ed. 409]; id., § 745, p. 324 [428]; id., § 746; *Lowman* v. *Dale*, 3 Johns. Ch. 23; *McKay* v. *Carrington*, 1 McLean, 50; *More* v. *Smedburg*, 8 Paige, 600, 607.) If the defendants intended to repudiate their contract on the

ground of delay, they ought so to have advised plaintiffs before the foreclosure sale, so that they need not to have been at the expense of the purchase. (*Dougrey* v. *Topping*, 4 Paige, 94.) To constitute a novation of the contract which would have the effect of releasing Magee, there must have been an express agreement of plaintiffs to accept the new obligation in satisfaction of the old. (Domat's Civ. Law, 914, §§ 2304, 2306; 1 Pars. on Cont. 180; Bouvier's Law Dict. 231, Novations; *Auburn C. Bk.* v. *Hunsiker*, 72 N. Y. 252, 257.) The defense of *ultra vires*, offense against public policy, and incapacity of Munson to contract are not available to Magee. (*Kirschman* v. *Lediard*, 61 Barb. 573.) In the absence of proof of any agreement of plaintiffs to release Magee, the presumption is that his liability continued. (*Meridan Brit. Co.* v. *Zugler*, 48 N. Y. 247.) As in the common case of the agreement of the purchaser of property to pay a debt of the vendor as the consideration of the purchase, the original debtor is not discharged unless by the express agreement of the creditor upon sufficient consideration. (*Noel* v. *Murray*, 3 Kern. 167; 1 Pars. on Cont. 187; *Thorp* v. *K. Coal Co.*, 48 N. Y. 253; *Bentley* v. *Vanderhuysen*, 35 id. 677; *Calvo* v. *Davis*, 73 id. 211.) The bonds of the defendant company having been issued and delivered to Magee, being in his hands with notice, are chargeable with the equities of plaintiffs. (Story's Eq. Jur., §§ 783, 784, 788, 789; id., § 333; id., §§ 422, 423, 424; *Sacia* v. *Rutherford*, 17 Barb. 15; *Colt* v. *Lanier*, 9 Cow. 320.) Munson, although director and president, as well as the other plaintiffs, might become a holder of the bonds of the company, and might enforce them against the property of the company for their full amount. (*Duncomb* v. *N. Y., H. & N. R. R. Co.*, 88 N. Y. 1.) Being such holder and owner of bonds secured by mortgage of the company, of which he is a director, he can take measures to and procure the foreclosure of such mortgage, the same as any other bondholder. (*Harpending* v. *Munson*, 91 N. Y. 650; *Marie* v. *Garrison*, 83 id. 14; 61 How. Pr. 93; Laws of 1857, chap. 144, § 1; Laws of 1873, chap. 469, § 1; Laws of 1873, chap. 710, § 1.) The plain-

tiffs, who together owned a large number of shares, had a right to enter into any arrangement for the protection of their interests not prohibited by law. (*Marsh* v. *Russell*, 66 N. Y. 288; *Phippen* v. *Stickney*, 3 Metc. 384; *Wicker* v. *Hoppock*, 6 Wall. 94; *Marie* v. *Garrison*, 83 N. Y. 14, 29, 30.) Where the contract does not so appear upon its face to be against public policy it must be alleged and proved that it was. (*Harris* v. *Tumbridge*, 83 N. Y. 99; *People* v. *Stephens*, 71 id. 527; *Dick* v. *Cooper*, 24 Penn. 217; *Galton* v. *Enniss*, 1 Collyer, 243; *In re Carew's Estate*, 26 Beav. 187; *Phippen* v. *Stickney*, 3 Metc. 384; *Jones* v. *North*, L. R., 19 Eq. Cas. 426; Kerr on Frauds, 224.) This is not a case of improper interference with competition at judicial sales. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 171, 172; *Woodruff* v. *Erie R. Co.*, 93 id. 615, 616.) The law will not presume a contract illegal or against public policy and so void, when it is capable of a construction which will make it lawful and valid. (*Ormes* v. *Dauchy*, 82 N. Y. 443; *Honeger* v. *Wettstein*, 94 id. 260.) A corporation cannot avail itself of the defense of *ultra vires* where the contract has been in good faith fully performed by the other party, and the corporation has had the full benefit of the contract. (*Woodruff* v. *Erie R. Co.*, 93 N. Y. 619.) The assumption by the company of Magee's contract to "deliver or cause to be delivered to the" plaintiff the first mortgage bonds in question did not release Magee. (*Cuming* v. *Hill*, 5 Barn. & Ald. 60; *Davidson* v. *Westchester Gas Co.*, 99 N. Y. 568; *Auburn City Bk.* v. *Hunsiker*, 72 id. 257.)

*George F. Comstock* for respondents. The original agreement being that one of the parties should not bid against the other at a judicial sale, and should have the property after being bid in by the other, on the terms which they thought were for their mutual interest, the law will not enforce it. (*Howell* v. *Mills*, 53 N. Y. 322; *Atchison* v. *Mallon*, 43 id. 147; *Brackett* v. *Wyman*, 48 id. 667; *Meech* v. *Bennett*, Lalor's Sup. 191; *Jones* v. *Caswell*, 3 Johns. Ch. 29; *Doolin* v. *Ward*, 6

id. 194; *Wilbor* v. *Grow*, 8 id. 346; *Thompson* v. *Davies*, 13 id. 112; *Hawley* v. *Cramer*, 4 Cow. 717; *Wheeler* v. *Wheeler*, 5 Lans. 355; *Bliss* v. *Matteson*, 45 N. Y. 22.) 'The laws confer no power to purchase, without definite surveys and location, the line of an unconstructed railway of another railroad corporation; and the policy of those laws condemn all contracts which locate the termini or route of the railway until the proper surveys are made. (*Dix* v. *Shaver*, 14 Hun, 392; *Turnpike Co.* v. *North*, 1 Hill, 318; *Plankroad Co.* v. *Snediker*, 18 Barb. 317; *Railroad Co.* v. *Miller*, 15 N.Y. 583.) This contract, by preventing bidding and competition at said mortgage sale, was against public policy, and illegal and void. (*Atchison* v. *Mallon*, 43 N. Y. 147; *Brackett* v. *Wyman*, 48 id. 667; *Doolin* v. *Ward*, 6 Johns. 194; *Slingluff* v. *Eckel*, 24 Penn. St. 472; *Gardner* v. *Morse*, 25 Me. 140; *Hawley* v. *Cramer*, 4 Cow. 717; *Wheeler* v. *Wheeler*, 5 Lans. 355; *Gray* v. *Hook*, 4 N. Y. 449; *Meech* v. *Bennett*, Lalor's Sup. 191; *People* v. *Lord*, 6 Hun, 390; *Troup* v. *Wood*, 4 Johns. Ch. 254.) Munson, as director and president of the Syracuse, Geneva and Corning Railway Company, could not purchase for it the property which he sold as trustee of the Sodus Bay, etc., Railroad Company. (*Aberdeen R. Co.* v. *Blaikie Bro's*, 2 Eq. Rep. 1281; *S. C.*, 2 McQueen, 461; *Flanigan* v. *Great Western R. Co.*, L. R., 7 Eq. 116; Pomeroy on Cont., § 285; Waterman on Spec. Perf. of Cont., § 218; *Flint & Pere Marquette R. Co.* v. *Dewey*, 14 Mich. 477; *Thomas, Trustee*, v. *Brownville, Ft. K. & P. R. R. Co.*, 2 Fed. Rep. 877; *Barnes* v. *Brown*, 11 Hun, 315, 319; *Fremont* v. *Stone*, 42 Barb. 169; *N. Y. C. Ins. Co.* v. *Nat. Pro. Ins. Co.*, 14 N. Y. 85; *Fish* v. *Leser*, 69 Ill. 394; *Terwilliger* v. *Brown*, 59 Barb. 9; affirmed, 44 N. Y. 237, marginal note; *Torrey* v. *Bk. of Orleans*, 9 Paige, 650; *Greenwood* v. *Spring*, 54 Barb. 375.) Munson, while director and president of both companies, could not make said contract securing to himself a preference or greater advantage than other creditors. (*Bliss* v. *Matteson*, 45 N. Y. 22; *Van Epps* v. *Van Epps*, 9 Paige, 238.) He could not sell the Sodus Bay, etc., Company road out and ter-

minate its existence, and form a new company. (*Abbott* v. *American Hard Rubber Co.*, 33 Barb. 578.) Neither could Munson, as director and president of the Syracuse, Geneva and Corning Railway Company, tack on to it the worthless remains of another railroad company, or bind said Syracuse, Geneva and Corning Railway Company to issue its bonds therefor. (*Frothingham, Adm'r, etc.*, v. *Burney*, 6 Hun, 366; *H. & N. H. R. R. Co.* v. *Croswell*, 5 Hill, 383; *Prest. of Un. Bridge Co.* v. *T. & L. R. R. Co.*, 7 Lans. 240; *Bissell* v. *M. S. & N. Ind. R. R. Co.*, 22 N.Y. 258; *Winch* v. *B. L. & C. J. R. R. Co.*, 13 Eng. L. & Eq. 506.) Munson's relations as director and president of the Sodus Bay, etc., Company were such as not only to make his contract to acquire and convey the absolute title to all its property at least voidable, but also such as to render his alleged title of very doubtful validity. (*Colburn* v. *Morton*, 3 Keyes, 296; *Gardner* v. *Ogden*, 22 N. Y. 327.) The part of said contract — the procuring title to and conveyance of the entire property in question — was a condition precedent to defendants giving their mortgage bonds therefor. (*Grant* v. *Johnson*, 5 N. Y. [1 Seld.] 247, 254; *Jones* v. *Gardner*, 10 Johns. 265; *Green* v. *Reynolds*, 2 id. 207.) Where parties, as the defendants in this case, contract for a specified property, courts will not compel them to accept worthless parts thereof nor entirely different property, and pay a large price therefor. (*Seymour* v. *DeLancy*, 6 Johns. Ch. 222; Hopk. Ch. 436; *Gebert* v. *Peterlu*, 38 N. Y. 165; *Hinckley* v. *Smith*, 51 id. 21; Pomeroy on Cont. 421, § 347; Story's Eq. Jur., §§ 749, 750, 778; Fry on Spec. Perf. of Cont. 347, marg. p. 253; *Richmond* v. *Gray*, 3 Allen [Mass.], 25; *Pyrke* v. *Waddingham*, 17 Eng. L. & Eq. 534; *Nicol* v. *Carr*, 35 Penn. St. 381; *Starms* v. *Allison*, 2 Head [Tenn.], 221; *Speakman* v. *Forepaugh*, 44 Penn. St. 363; *Dobbs* v. *Norcross*, 24 N. J. Eq. 327; *Griffin* v. *Cunningham*, 19 Gratt. [Va.] 571; *Wilson* v. *Brumfield*, 8 Blatchf. [Ind.] 146; *Jordan* v. *Fay*, 40 Me. 130; *King* v. *Knapp*, 59 N. Y. 462; *Post* v. *Weil*, 8 Hun, 418; *B'klyn Pk. Comm'rs* v. *Armstrong*, 45 N. Y. 234; *Haight* v. *Child*, 34 Barb. 186;

*Bensel* v. *Gray*, 80 N. Y. 517; *Delavan* v. *Duncan*, 49 id. 485; *Hellreigel* v. *Manning*, 97 id. 56, 60; *Post* v. *Bernheimer*, 31 Hun, 247, 253; *Belknap* v. *Sealey*, 14 N. Y. 144.) The inadequacy of the consideration in this case, that is, the difference between the real value of the property which was conveyed by the deed, and the value of defendants' bonds which plaintiffs ask to have adjudged to them herein, is so great as to render the contract sued on a hard and unconscionable one, and one, therefore, which a court of equity will not specifically enforce, as such enforcement would produce injustice. (*McCarthy* v. *Kyle*, 4 Cald. [Tenn.] 348, 355, 356; *Morgraff* v. *Muir*, 57 N. Y. 155; *Stanton* v. *Miller*, 58 id. 192, 200; *Shriver* v. *Leiss*, 49 Md. 384; Waterman on Spec. Perf. of Cont., § 169; *Williston* v. *Williston*, 41 Barb. 635, 642; *Seymour* v. *DeLancy*, 3 Cow. 445; 25 N. Y. 202; Willard's Eq. 268; *Smith* v. *Wood*, 12 Wis. 383; *Oil Creek R. R. Co.* v. *Atlantic R. R. Co.*, 51 Penn. St. 65, 72; *Backus' Appeal*, 58 id. 187; *Mississippi R. R. Co.* v. *Cromwell*, 91 U. S. 643; *Osgood* v. *Franklyn*, 2 Johns. Ch. 1, 23; 2 Kent's Com. 487, and note *d; Lloyd* v. *Wheatley*, 2 Jones' Eq. [N. C.] 267; *Fish* v. *Leser*, 69 Ill. 394; *Plummer* v. *Kippler*, 26 N. J. Eq. 481, 482.) The court, in the way of specifically enforcing said contract in question, could or would merely and fully carry out the intention of the parties to it. (Story's Eq. Jur., § 791; 1 R. S. 600, § 3; [or 2 R. S., Banks & Bros'. 6th ed., § 3]; *In re Rens. & Sar. R. R. Co.* v. *Davis*, 43 N. Y. 137; *N. Y. & H. R. R. Co.* v. *Kip*, 46 id. 546; Laws of 1869, vol. 2, chap. 917, § 9; Pomeroy on Cont. [Spec. Perf.], §§ 327, 163; *Woodward* v. *Harris*, 2 Barb. 440.) The several agreements signed by the same parties throughout formed one entire contract and are to be construed together. (2 Pars. on Cont. 503; *Hull* v. *Lauderdale*, 46 N. Y. 70, 75; *Whitford* v. *Laidler*, 64 id. 145.)

ANDREWS, J. We think it would be difficult to affirm the judgment of the court below, dismissing the complaint, if in order to do so it was necessary to uphold the proposition that

the original contract of August 13, 1875, between the plaintiffs
and Magee, was invalid either because Munson, one of the
plaintiffs, was at the time of entering into the contract, a
director of the Sodus Bay and Corning Railroad Company, or
for the reason that the contract violated the rule which prohibits
combinations to prevent competition at a judicial or other pub-
lic sale.   The situation was briefly this.   The Sodus Bay and
Corning Railroad Company was organized in 1871, to con-
struct and operate a railroad from Corning, in the county of
Steuben, to Sodus Bay in the county of Wayne, a distance of
about eighty-six miles, passing through the counties of Schuyler,
Yates and Ontario, by way of Savona, Penn Yan and Geneva.
Of this road the plaintiff Munson was president and a director.
In 1872, the corporation created a mortgage on its projected
road, its franchises and property for $1,500,000, to secure a
contemplated issue of bonds to that amount, to be used in the
construction of the road.   It proceeded to secure rights of way
over a portion of its line, graded about thirty miles of its track
between Savona and Geneva, and expended in the aggregate
in securing titles and in the prosecution of the work, the sum
of $250,000.   It issued bonds under the mortgage, to the
amount of $257,000, from the proceeds of which the expendi-
tures were made.   At the date of the contract between the
plaintiffs and Magee, August 13, 1875, the plaintiffs held and
controlled of these bonds, $241,000 in amount, the remaining
$16,000 being in the hands of a former treasurer of the com-
pany, whose title thereto seems to have been disputed, but who
subsequently received a dividend thereon from the proceeds of
the mortgage sale.   The title of the plaintiffs to the $241,000
of bonds, was not questioned, and there is no suggestion that
they were not *bona fide* holders for value, or that the bonds did
not represent a valid debt against the company for their full
amount.   In January, 1874, the company became insolvent.   It
defaulted in the payment of the interest on its bonds at that
date, and in the spring of 1875, all operations on the road were
suspended, and the further prosecution of the enterprise was
practically abandoned.   In short when the contract of August 13,

1875, was made the company was hopelessly bankrupt, the work had stopped, the interest on its bonds had been unpaid for eighteen months, and practically its whole property consisted of disconnected rights of way over a portion of its route, and a road-bed partially graded between Savona and Geneva, and whatever property it had of any value was acquired through the means furnished by the holders of the bonds. Under these circumstances the parties entered into the contract of August 13, 1875. It recites that the plaintiffs own and represent $241,000 of the bonds of the Sodus Bay and Corning Railroad Company, and that Magee, the other party to the contract, represents the persons and interests proposing to organize another railroad company for the construction of a railroad from the vicinity of Corning to Geneva. The parties of the first part (the plaintiffs) agree to proceed at once to secure the foreclosure of the mortgage, and to purchase on the foreclosure sale, the property, rights of way, franchises and interests covered thereby, and convey the same to Magee or to the railroad company proposed to be organized. Magee, the other party to the contract, agrees to deliver or cause to be delivered, to Munson and his associates in payment for the said property, rights of way and franchises, first mortgage bonds of the proposed railway company, to the amount of fifty per cent of the principal and interest, of the bonds of the Sodus Bay and Corning Railroad Company, held by them. The contract contains other stipulations not now necessary to mention. In the view we take of another question in the case, we deem it unnecessary to determine whether the contract of August 13, 1875, was valid as between the original parties thereto, that is, whether the plaintiff Munson, in entering into the contract, violated any duty owing by him to the corporation of which he was a director, or whether the contract as a whole, was, on the part of Munson and his associates, any thing more than a legitimate arrangement to protect their interests as bondholders, and to make the mortgage security available for the payment of a part of the mortgage debt. The contract was not by or with the Sodus Bay and Corning Railroad Company, and assum-

ing that the question as to the validity of the original contract can be raised in this action, we are not prepared, without further consideration, to condemn the transaction on either of the grounds suggested. (*Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190; *Marie* v. *Garrison*, 83 id. 14; *Harpending* v. *Munson*, 91 id. 650.)

But this action is not brought to enforce the contract of August 13, 1875, against the defendant Magee. It is an action to compel the specific performance by the defendant corporation, of the undertaking of Magee in that contract, to deliver the bonds of the new company as therein provided, founded upon the assumption by the new company of that obligation, by resolution of its board of directors, passed August 13, 1875, and also upon the subsequent contract of September 14, 1875, made between the company and the plaintiffs, which in its primary provision substituted the company in the place of Magee as the party of the second part in the contract of August 13, 1875. The action in its entire scope is framed to enforce the obligation of the defendant corporation, under its contract of assumption. It was tried upon this theory, the exceptions point to this as the ground of the action, and Magee is joined as defendant and in the demand of relief, as the custodian of bonds of the company which the plaintiffs claimed he should be adjudged to deliver to them, by the judgment in the action. Throughout the trial the action was treated, as an action against the defendant corporation upon its contract, and in no respect as an action against Magee, to enforce a liability against him under the contract of August 13, 1875. The plaintiffs therefore are compelled to meet the question, whether upon principles of equity they are entitled to the aid of the court to enforce an executory contract between themselves on the one side, and the defendant corporation on the other, for the sale of the property of the former, and in a case where one of the plaintiffs at the time the contract was made, was a director of the purchasing corporation and took part in making the contract upon which the action is brought. For a proper understanding of the situation, a few additional facts need to be stated. On

the 26th of August, 1875, Magee and his associates organized a railroad company, to construct a railroad from Corning to Geneva, as contemplated by the contract of August 13, 1875. The plaintiff Munson was one of the promoters and became a director and stockholder, and was the first president of the corporation. On the 31st of August, 1875, Magee executed a written assignment to the new corporation, The Syracuse, Geneva and Corning Railway Company, of his rights under the contract with the plaintiffs of August 13, 1875, and the board of directors at a meeting on the same day, in which the plaintiff Munson participated, passed a resolution assuming the contract on the part of Magee, and agreeing to perform it, except in one particular not now material to be mentioned. On the 14th of September, 1875, the contract before referred to of that date, was entered into between the plaintiffs and the new corporation, and was executed individually by each of the plaintiffs, and on the part of the corporation, by the plaintiff Munson, as president. The proceedings of the board of directors indicate that when the resolution of August 31, 1875, was passed, and for two or three months thereafter, the company contemplated building its road to Geneva on the same line substantially as that of the Sodus Bay and Corning Railroad Company, but in December, 1875, it located an entirely new line, not coincident in any part with the line originally contemplated, upon which new line its road was subsequently built. It is found, and the evidence supports the finding, that the best interests of the company were promoted by adopting its present route. The plaintiffs procured a foreclosure of the mortgage and purchased the property, as they had agreed, and subsequently, in 1877, tendered a deed thereof to the defendant corporation, and demanded the delivery of the bonds, which was refused.

In determining the legal question presented, it is proper to say that there is no evidence of any actual fraud or collusion on the part of any of the parties to the original contract of August 13, 1875, or that the contract of assumption was induced by any improper appliances or motives whatever. It is plain that

Magee and his associates, when they entered into the original contract, contemplated building the proposed road on the line of the Sodus Bay and Corning Railroad Company, and that the contract was made with a view of acquiring for the new road, the rights of way and other property of that corporation. It is equally plain that the contract of assumption was entered into by the new corporation with the same expectation and for the same purpose. If the contract was otherwise unobjectionable, it could not, we think, be assailed on the ground that it was a contract outside of the power of the defendant corporation. The statute authorizes a railroad corporation to acquire land for its track and other necessary purposes, by voluntary purchase or by condemnation (Laws of 1850, chap. 140, §§ 14, 15), and an agreement made on the purchase of rights of way, to pay therefor in bonds of the purchasing corporation, secured by a mortgage on its property, is clearly we think within the implied, if not within the express powers of a railroad corporation. (§ 28, subd. 10.) The contract made between the defendant corporation and the plaintiffs, was in substance a contract to purchase rights of way, and although the defendants' line was not formally located on the line proposed to be purchased, and was in fact subsequently located on a different line, this change of purpose did not, we think, affect the question of corporate power.

But we are of opinion that the contract of September 14, 1875, is repugnant to the great rule of law which invalidates all contracts made by a trustee or fiduciary, in which he is personally interested, at the election of the party he represents. There is no controversy as to the facts bringing the case as to Munson within the operation of the rule. He and his associates were dealing with a corporation in which Munson was a director, in a matter where the interests of the contracting parties were or might be in conflict. The contract bound the corporation to purchase, and Munson, as one of the directors, participated in the action of the corporation in assuming the obligation, and in binding itself to pay the price primarily agreed upon between the plaintiffs and Magee. He stood in

the attitude of selling as owner and purchasing as trustee. The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case. It prevents frauds by making them as far as may be impossible, knowing that real motives often elude the most searching inquiry, and it leaves neither to judge nor jury the right to determine upon a consideration of its advantages or disadvantages, whether a contract made under such circumstances shall stand or fall. It can make no difference in the application of the rule in this case, that Munson's associates were not themselves disabled from contracting with the corporation, or that Munson was only one of ten directors who voted in favor of the contract. The contract on its face, notified Munson's associates of his relation to the corporation, and that the contract was subject to be defeated on that ground, and on the other hand a corporation in order to defeat a contract entered into by directors, in which one or more of them had a private interest, is not bound to show that the influence of the director or directors having the private interest, determined the action of the board. The law cannot accurately measure the influence of a trustee with his associates, nor will it enter into the inquiry, in an action by the trustee in his private capacity, to enforce the contract in the making of which he participated. The value of the rule of equity, to which we have adverted, lies to a great extent in its stubbornness and inflexibility. Its rigidity gives it one of its chief uses as a preventive or discouraging influence, because it weakens the temptation to dishonesty or unfair dealing on the part of trustees, by vitiating, without attempt at discrimination, all transactions in which they assume the dual character of principal and representative.

The rule has been declared and enforced in a great variety of cases, but in none perhaps with more vigor and complete-

ness, both upon principle and authority, than in the leading case of *Davoue* v. *Fanning* (2 Johns. Ch. 251, 252). But the case of *Aberdeen Railway Company* v. *Blakie and others* (2 Eq. 1281), decided by the House of Lords, is in many of its features similar to the present one. In that case it appeared that the plaintiffs were a ˙manufacturing firm, and that one of them was also a manager of the Aberdeen Railway Company, the defendant, and the chairman of the board. At a meeting of the managers, they by resolution authorized their engineer to contract for iron chairs needed by the company. The agent contracted with the plaintiffs' firm. It did not appear that the member of the firm, who was also a manager and the chairman of the company, intermeddled with the dealing on either side, further than that it may be assumed he was at the meeting — which authorized the engineer to procure a supply of chairs. The plaintiffs brought their suit to enforce specifically the performance of the contract, or in the alternative to recover damages for its non-performance. After a decision in their favor in the lower court, the company appealed to the House of Lords, where the ruling was unanimously reversed on the ground that the contract was condemned by the rules of equity, as having been made between the company of which one of the plaintiffs was a manager, and a private firm of which he was a member. The opinions of Lord Chancellor CRANWORTH and of Lord BROUGHAM vindicate upon impregnable grounds the general rule and its application to the particular case.

We have designedly omitted up to this time, special reference to a circumstance which it is claimed takes the case out of the operation of the general equitable rule. That is, that the contract with the defendant corporation, was not on the part of the plaintiffs a fresh dealing in respect to the sale of their interest in the property of the Sodus Bay and Corning Railroad Company, but was simply a substitution in the place of Magee, of the corporation organized by him and his associates, for the purpose of carrying out the original arrangement. But the promoters of a corporation are not the corporation. The legal body is distinct from the individuals who compose it. The

statute confers no authority upon the promoters of a corpora-
tion to enter into preliminary contracts binding the corpora-
tion when it shall come into existence. Such contracts may
bind the individuals who make them. If adopted by the cor-
poration, and they are within the corporate powers, and are not
otherwise subject to objection, they may become the contracts
of the corporation and enforceable as such. In respect to con-
tracts of promoters Judge REDFIELD says: "The promoters
are in no sense identical with the corporation, nor do they rep-
resent it in any relation of agency, and their contracts could,
of course, only bind the company so far as they should be subse-
quently adopted by it, as their successors." (1 Redf. on Rail-
ways, 9.) But the corporation is at liberty to refuse to sanction
them, and if its sanction is obtained by the act or co-opera-
tion of directors who have a private interest, we perceive no
reason why, under the general rule, the corporation may not
resist an action for specific performance, at least in a case
where it has not accepted the consideration and taken the
benefit.

It is claimed that the general policy of the law in this State
sanctions the contract in question, and we are referred to chap-
ter 710, Laws of 1873, which authorizes the purchaser, or the
grantee of the purchaser of the real estate, tracks and fixtures
of a railroad corporation sold under a mortgage or decree, to
associate with him other persons and form a new corporation
to maintain and operate the road. But the transaction in ques-
tion was not in any proper sense an arrangement for the reor-
ganization of an existing railroad. It was not contemplated
that the new corporation should operate or maintain the road
of the old corporation. The line of the new corporation, by
its articles, extended only from Corning to Geneva, whereas
the route of the old corporation was from Corning to Sodus
Bay. When the contract was made, the enterprise of build-
ing the Sodus Bay and Corning road had been commenced, but
the road had not been built. Its route had only in part been
located, and the great burden and expense of the undertaking

was yet to be incurred. The case is not in terms within the act of 1873, nor as we think within its spirit and intent.

These views lead to an affirmance of the judgment.

All concur, except RAPALLO and FINCH, JJ., not voting.

Judgment affirmed.