MERRILL v. UNITED BOX BOARD & PAPER CO.

(Supreme Court, Appellate Division, Third Department. March 23, 1911.)

MASTER AND SERVANT (§ 40*)—ACTIONS FOR BREACH—BURDEN OF PROOF.

Where plaintiff sought to recover damages for the breach of a contract of personal service, which he maintained was to continue to a certain time, the burden of proving that the contract was to continue for that time was upon him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 47–49; Dec. Dig. § 40.*]

Houghton, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Cyrus S. Merrill against the United Box Board & Paper Company. From a judgment for plaintiff, based on the report of the referee, defendant appeals. Reversed, referee discharged, and a new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

Frederick E. Wadhams (James Todd, of counsel), for appellant. William S. Ostrander, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PER CURIAM. So far as the payments already made to the plaintiff are concerned, the court finds no reason for requiring him to refund them. The propriety of a contract for five years, under all the circumstances of the case, is not apparent. The burden of proof rested with the plaintiff to show its fairness and propriety, when he seeks to recover for time not served. He has not met that burden, and, under all the circumstances, the court is satisfied he should receive no further compensation after the notice was given terminating his services. The counterclaim for $5,000, the balance due upon the bond account, was sustained by a fair preponderance of evidence.

The judgment should · therefore be reversed upon the law and facts, the referee discharged, and a new trial granted, with costs to the appellant to abide the event. All concur (BETTS, J., in result in opinion), except HOUGHTON, J., who dissents, and votes for an affirmance of the judgment, with a deduction, however, of the $5,000 counterclaim from the plaintiff's recovery.

BETTS, J. (concurring). I think this contract comes under the class of cases where a director undertakes to and .does contract with his corporation by his fellow directors. Such a contract is not void, but is voidable at any time at the instance of the directors.

This was a contract for the employment of a director for a term of five years, of which about three years had elapsed, when plaintiff was discharged and the contract terminated. Upon the change of the personnel of the directors, this contract was promptly disaffirmed, and the plaintiff discharged from any farther service to the defendant. The plaintiff accepted this employment and entered upon this contract in the light of the law as it existed at the time, and he cannot complain if his corporation, with whom he contracted, saw fit at any time to disaffirm that contract, as it was simply acting within its rights.

Perhaps the first case in this state in which the principle above enunciated was set forth, and certainly one in which it was presented with much vigor and clearness, was an opinon by the chancellor in Davoue v. Fanning et al., in 2. Johns. Ch. 252–257, written in 1816, which was a case where a trustee under a will sought to and did sell the trust estate, and himself 'became interested in the purchase thereof. The chancellor held:

"The case, therefore, falls clearly within the spirit of the principle that if a trustee, acting for others, sells an estate and becomes himself interested in the purchase, the cestui que trust is entitled to come here, as of course, and set aside that purchase, and have the property re-exposed for sale."

And the chancellor further held that it made no difference whether the sale was at public auction and bona fide and for a fair price or otherwise. There the principle was clearly announced that where a person attempted to, and did, act both in a representative and in a private capacity, the court would promptly set aside such action, or halt it, upon the application of the persons represented, whether the action of the representative was or was not for the benefit of those whom he represented. That principle has never been successfully assailed or disturbed, but has been followed with approval ever since.

It was held in Barnes v. Brown, 80 N. Y. 527, where a contract had been made between the directors of a corporation and an individual director, that, if he had attempted to perform the contract while he was director, the stockholders could probably have intervened by some suit in equity, adapted to the nature of the case, to nullify the contract as to him, or to restrain him from the performance thereof, or to compel him to resign his office of director or give up the contract. In any view of the case, it was not absolutely void, but voidable, at the election of the corporation or its stockholders.

In Metropolitan Elevated Railway Company v. Manhattan Railway Company, 14 Abb. N. C. 272, the court holds:

"I think, therefore, that the undoubted rule of law in this state is that every contract entered into by a director with his corporation may be avoided by the corporation within a reasonable time, irrespective of the merits of the contract itself."

In Duncomb v. New York, H. & N. R. Co., 84 N. Y. 190–198, it is held:

"It is not intended to deny or question the rule that, whether a director of a corporation is to be called a trustee or not, in a strict sense, there can be no doubt that his character is fiduciary, being intrusted by others with powers which are to be exercised for the common and general interests of the corporation, and not for his own private interests, and that he falls, therefore, within the doctrine by which equity requires that confidence shall not be abused by the party in whom it is reposed, and which it enforces by imposing a disability, either partial or complete, upon the party intrusted to deal, on his own behalf, in respect to any matter involving such confidence. * * * Nor is it at all questioned that, in such cases, the right of the beneficiary or those claiming through him to avoidance does not depend upon the question whether the trustee in fact has acted fraudulently, or in good faith and honestly, but is founded upon the known weakness of human nature, and the peril of permitting any sort of collision between the personal interests of the individual and his duties as trustee, in his fiduciary character."

In Munson v. Syracuse, Geneva & Corning Railroad Company, 103 N. Y. 58, 73, 8 N. E. 355, 358, it is held:

"But we are of opinion that the contract of September 14, 1875, is repugnant to the great rule of law which invalidates all contracts made by a trustee or fiduciary, in which he is personally interested, at the election of the party he represents. There is no controversy as to the facts bringing the case as to Munson within the operation of the rule. He and his associates were dealing with a corporation in which Munson was a director, in a matter where the interests of the contracting parties were or might be in conflict. The contract bound the corporation to purchase, and Munson, as one of the directors, participated in the action of the corporation in assuming the obligation, and in binding itself to pay the price primarily agreed upon between the plaintiffs and Magee. He stood in the attitude of selling as owner and purchasing as trustee. The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction, or refuses to enforce it, *at the instance of the party whom the fiduciary undertook to represent*, without undertaking to deal with the question of abstract justice in the particular case. It prevents frauds, by making them as far as may be impossible, knowing that real motives often elude the most searching inquiry, and it leaves neither to judge nor jury the right to determine upon a consideration of its advantages or disadvantages, whether a contract made under such circumstances shall stand or fall. * * * The contract on its face notified Munson's associates of his relation to the corporation, and that the contract was subject to be defeated on that

128 N.Y.S.—61

ground; and, on the other hand, a corporation, in order to defeat a contract entered into by directors, in which one or more of them had a private interest, is not bound to show that the influence of the director or directors having the private interest determined the action of the board. The law cannot accurately measure the influence of a trustee with his associates, nor will it enter into the inquiry, in an action by the trustee in his private capacity, to enforce the contract in the making of which he participated. The value of the rule of equity to which we have adverted lies to a great extent in its stubbornness and inflexibility. Its rigidity gives it one of its chief uses as a preventive or discouraging influence, because it weakens the temptation to dishonesty or unfair dealing on the part of trustees, by vitiating, without attempt at discrimination, *all transactions* in which they assume the dual character of principal and representative."

See Barr v. New York, Lake Erie & Western Railroad Company, 125 N. Y. 263, 26 N. E. 145, where it is held that the rule as stated above—

"extends to all transactions where the individual's personal interest may be brought into conflict with his acts in a fiduciary capacity, and it works independently of the questions of whether there was fraud, or whether there was a good intention. Where the possibility of such a conflict exists, there is the danger intended to be guarded against by the absoluteness of the rule. But the rule does not operate to avoid ab initio all transactions of a trustee where he is interested, but is generally limited in its operation to rendering them voidable, at the election of the party whose interests are concerned in the question of their affirmance or disaffirmance."

It appears here that the plaintiff prepared the contract of his employment, that such contract was approved by the executive committee, and that the officers of the company were directed by the executive committee to sign the contract. Later, at a meeting of the board of directors at which the plaintiff was present, the minutes of the executive committee meeting in question were unanimously approved, so that the plaintiff voted to approve his own contract. I think we have examined far enough now to show that this action of the defendant in disaffirming this contract and discharging the plaintiff was within the decisions and in compliance therewith.

It appears that there was some small amount of services rendered after his last payment; that is, his last payment was for services including January 31, 1907, and he was discharged some time in April. However, as it appeared from the testimony that the plaintiff was absent in Europe on full pay for two months, and also a month in the West Indies and other places, where he was rendering no services under this contract, I think that he has no claim against the company for anything additional to that which he has been paid.

Where employment is sought from the directors, and payment therefor claimed by a director of a corporation for services which might otherwise be fairly claimed to be required as a director, the burden is on the director to show that employment necessary, and that the duties which he performed for his corporation were separate and distinct from his duties as a director, and that the services were reasonably worth what was charged therefor, or agreed to be paid therefor. This burden I do not think the plaintiff met in this case.

The referee holds in his opinion that a corporation can manage its purely business affairs better than can the courts, and should be inter-

fered with by the courts in such matters only in exceptional cases. While that is true, it is also true that the judgment here proceeds upon the theory that the original action of employing the plaintiff, a director, was correct and valid by the board of directors, and that his subsequent discharge by the board of directors was invalid. Certainly, if the directors should be sustained in the employment of plaintiff on the theory advanced, they should also be sustained in the discharge, as reasonably promptly after the change of the directorate the contract was disaffirmed.

It follows that the judgment should be reversed as to the claim for services, and a new trial granted, with costs and disbursements.

I concur with the majority opinion as to its disposition made as to the counterclaim of $5,000, balance unpaid on bond subscription.