FRANK E. KINSMAN, Appellant, *v.* HARVEY EDWARD FISK and Others, Respondents.

*Pledge by a corporation to a director — ratification by a corporation of the canceling of a trust of which it is the beneficiary — estopped from denying its ownership of stock — a consenting stockholder of the corporation also estopped.*

While the law looks with disfavor upon contracts made between a director or officer of a corporation and the corporation, because it cannot accurately measure the influence of a trustee with his associates, a pledge by a corporation as collateral for a loan actually made by an officer or director thereof to the corporation, is not void by reason of the relation of the parties. If the pledge would be valid if made to an outsider, it is none the less valid because made to a firm of which a director of a corporation is a member.

Although a corporation, the beneficiary named in a trust agreement, was not a formal party to an agreement canceling such trust agreement, yet if, so far as it was possible for it to do so, the corporation confirmed and ratified the canceling agreement, its acquiesence in and ratification of the same is as effectual as if it had been a formal party to the contract.

If a *cestui que trust* accepts stock from its trustees, holds out the same as its own, and requests a loan thereon for its benefit, it cannot allege in defense of a demand for the payment of such loan that the stock did not belong to it. If the *cestui que trust* is a corporation, a stockholder thereof is not in any better position than the corporation if he was a consenting party to the transaction through all of its stages.

APPEAL by the plaintiff, Frank E. Kinsman, from an order of the Supreme Court, made at the New York Special Term and entered

in the office of the clerk of the county of New York on the 17th day of August, 1894, denying the plaintiff's motion made upon the return of an order to show cause why the temporary injunction granted in the action should not be continued, and vacating and dissolving the same in all respects.

*Edmund Luis Mooney*, for the appellant.

*Charles Steele* and *Edward C. Perkins*, for the respondents.

Parker, J.:

The plaintiff sues as a stockholder in behalf of the defendant company, claiming that an application to the directors to sue would be unavailing.

His motion for an injunction *pendente lite* having been denied, he seeks a review of the decision on this appeal. The defendant, the Kinsman Block System Company, in December, 1893, was without funds to carry on its business, and had incurred obligations amounting to about $4,000. It had no resources except its treasury stock, which was unsalable, and it became imperatively necessary that money should be raised in some manner or else the company must fail. Accordingly, at a meeting of the board of directors held December 21, 1893, it was resolved that the company should endeavor to borrow money on the pledge of its treasury stock, and the following resolution was passed:

"Whereas, In view of the fact that the Company has no money in its treasury, and is in immediate need of $4,000 to meet current bills and settlements;

"And whereas, In order to prosecute its work the company will be in need of further advances from time to time, until some paying contracts can be secured:

"Therefore, be it *resolved*, That the president and treasurer are hereby authorized to pledge all or any part of the treasury stock for moneys which they may need to borrow for company purposes from time to time, and that they be and hereby are authorized to give the notes of the company for such advances, and to sign such notes and authenticate them with the official seal."

As the invention had not proved a success which the corporation was formed to put on the market, and it had no property whatever,

except the patents, and had already expended a large sum of money, its stock had no market value, and little if any real value. It was only possible, therefore, to obtain a loan from Harvey Fisk & Sons, who were interested because they had already invested a considerable amount of money in the corporation. They loaned the money on the company's demand notes secured by a pledge of treasury stock.

When the $4,000 had been used more was needed to conduct the experiments, and more was furnished under like conditions until $21,500 had been loaned.

After a time the loan was called, but the company could not pay it, although several extensions were given it for the purpose.

That Harvey Fisk & Sons were then and still are willing to take the money due to them, and surrender the stock is unquestioned.

The appellant urges in the first place that the pledge was void because a director of the defendant company who participated in the meeting at which the resolution was passed, and was influential in procuring Harvey Fisk & Sons to make the loan, was a member of that firm.

While the law looks with disfavor upon contracts made between a director or officer of a corporation and the corporation, because it cannot accurately measure the influence of a trustee with his associates, no case has been brought to our attention which goes so far as to hold that a pledge as collateral for a loan actually made by an officer or director to the corporation is void.

The authorities cited by the appellant (*Munson* v. *Syracuse, G. & O. R. R. Co.*, 103 N. Y, 59, and *Hoyle* v. *Plattsburgh & Montreal R. R. Co.*, 54 id. 314) certainly do not support his contention.

As appears from the resolution which we have quoted, the directors resolved to pledge as collateral for loans to be made its treasury stock.

Harvey Fisk & Sons made the loan and accepted the pledge. The corporation needed the money and used it. The pledgees have asked merely that the loan be paid. They seek no advantage by the contract of pledge but simply such protection as it affords. They have, on several occasions, extended the time of payment, and it appears that they are ready and willing to return the stock if the loan made be paid.

It is conceded that the pledge would be valid if made to an outsider; it is none the less valid because a director of the corporation induced his firm to make a loan which no one else would make. (*Duncomb* v. *N. Y., H. & N. R. R. Co.*, 88 N. Y. 1.) It is further urged that the pledge was invalid because contrary to a certain trust agreement which the parties attempted, but unsuccessfully, as appellant contends, to terminate. It appears that prior to 1892, the plaintiff being the patentee of certain electrical inventions and owner of the patents issued therefor, sought the assistance of Harvey Fisk & Sons in their exploitation.

The plaintiff having represented that the sum of $20,000 would be ample to demonstrate the practicability and usefulness of his invention, Fisk & Sons, on the faith of such representation, agreed to provide that amount by a nominal subscription, at par, for 200 shares of the new company's stock.

The plaintiff was anxious that the Fisks should agree to sell enough of the company's stock to raise $100,000, but they refused to do so, on the ground that they could not offer such stock to their customers until its value had been practically demonstrated. They accordingly declined to, and did not assume any obligation whatever, except to advance the sum of $20,000, which the plaintiff had represented was sufficient to demonstrate the value of his patents and make the company's stock marketable.

The original negotiation contemplated that a certain amount of the new company's stock should be left in its treasury for working capital, but when the agreement was actually formulated it was deemed best, instead of returning such stock directly into the company's treasury, to place it in the name of trustees, so that no question might be raised as to the stock being full paid, and also in order that the plaintiff and the Fisks might obtain a commission on future sales of such stock.

Accordingly, the agreement provided for the transfer to this plaintiff and Pliny Fisk, as trustees, of 6,940 shares of the stock of the company upon the following trusts: " One thousand shares thereof shall be offered for sale by the parties of the second part (Harvey Fisk and Sons) at par, and each subscriber thereto shall receive, as a bonus out of the said 6,940 shares, one other share of stock for each

share which he may purchase; ten per cent of the proceeds of such sales shall be paid as received to the party of the first part, and five per cent thereof may be retained by or paid to the parties of the second part as a commission upon such sales; the balance shall be paid over by the said trustees to the treasurer of the corporation for its own use.

"All stock in the hands of the trustees not sold or disposed of, as aforesaid, shall be held by the trustees for the use of the said corporation, and from and after the sale of the said thousand shares such remaining stock shall be sold by the trustees in such amounts as may be directed by the said corporation; five per cent upon the par value of said shares so sold shall be paid as received to the party of the first part; the parties of the second part shall receive a commission of five per cent upon the par value of the stock so sold, and the balance of the proceeds shall be paid over to the treasurer of the said company for the use thereof, excepting, however, two hundred and fifty shares, etc. * * * The said trustees shall not vote upon the said stock either personally or by proxy.

"The said trustees are to receive no compensation for their services as such. In case, by death or otherwise, either of them, or any successor to the said trust, shall cease to be a trustee a successor may be appointed, in writing, by the said company."

The company was duly organized with the plaintiff as president. Harvey Fisk & Sons paid the incorporation tax, paid the subscription of the several original subscribers to the stock, and also paid into the treasury $20,000, less the agreed commissions, as a nominal subscription for 200 shares of stock at par. An opportunity was obtained to place the experimental plant upon the Evanstown division of the St. Paul railroad. The plaintiff undertook the management of the business, but after spending a great deal of time and a large portion of the company's funds on the plant the work resulted unsuccessfully. The Fisks thereupon entered into negotiations with the plaintiff, looking either to his or their withdrawal from the company, in the course of which they offered to sell their stock for the amount of money actually advanced by them to the company.

This was not accomplished, but finally an arrangement was made by which the Fisks bought from the plaintiff for cash a sufficient amount of his stock to give them a majority of the outstanding stock of the company, and plaintiff in turn agreed to resign from the presidency

and accept the place of vice-president or consulting engineer with a salary of $5,000 per year. One of the objects of the new arrangement was the cancellation of the contract of January 14, 1892, which contained the provision relating to the so-called trust stock, which we have quoted, and the new agreement accordingly provided that the old contract should be canceled and terminated, except as to the provision reserving foreign rights of patents to the plaintiff. The new contract was fully consummated, and as a part of it, and for the purpose of putting an end to the trust stock provision, a certificate for such shares, which had previously stood in the name of the plaintiff and one of the Fisks as trustees, was indorsed by both of them and transferred to the company, and was by the plaintiff himself surrendered to the company for cancellation, a new certificate being issued in the name of the company and placed in the company's treasury. If it be assumed that the agreement of January 14, 1892, constituted a valid trust, it was terminated on October 11, 1893, by the consent of all parties concerned, the beneficial interest of the company in the stock held by the trustees becoming merged in its legal title, which was acquired by the transfer of the stock.

It was a trust which could be terminated by the combined action of the parties creating it, the trustees and the *cestui que trust,* if the result aimed at was, as in this case, for the benefit of the *cestui que trust.* To accomplish that purpose the parties to the original contract relinquished their right to commissions, the attempted limitations imposed were withdrawn, and so much of the stock as remained passed into the possession and control of the company by transfers duly made.

All parties interested acquiesced, and the company proceeded to make use of the stock to meet its necessities.

It is true that the company, the beneficiary, was not a formal party to the canceling agreement, but so far as it was possible for it to do so, it confirmed and ratified the agreement by accepting the surrender of the old trust certificate and issuing a new one in its own name, and its acts of acquiescence and ratification were as effectual as if it had been a formal party to the contract. (*Butterfield* v. *Cowing,* 112 N. Y. 486–491.)

But if it should be assumed that, as between the trustees and the *cestui que trust,* the trust agreement was not terminated, and the

title to the trust stock vested in the *cestui que trust*, as we have held, still the *cestui que trust*, having accepted the stock from the trustees as its own, held it out to another as such, and requested a loan thereon for its benefit, it cannot allege in defense of a demand for payment that the stock does not belong to it, nor is the plaintiff, who was a consenting party to the transaction through every stage of it, in any better position than the company, because he happens to be one of its stockholders.

The order should be affirmed, with ten dollars costs and printing disbursements.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Order affirmed, with ten dollars costs and disbursements.