CONVERSE v. SHARPE et al.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

INSOLVENT CORPORATION—LOAN FROM DIRECTORS — CONTRACT FOR SECURITY — VALIDITY.

Where directors of an insolvent corporation made a loan, to tide over an emergency in its affairs, on the supposition that it was solvent, their contract with the corporation to take security therefor, made in good faith at the same time, is not void.

Appeal from special term, New York county.

Action by Edmund C. Converse against Severyn B. Sharpe and others to determine the right to a certain fund. From an interlocutory judgment in favor of plaintiff and others, certain defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

E. L. Richards, Jr., for appellants.
E. B. Hill, for respondent Converse.
John M. Bowers and L. G. Reed, for respondent receiver.

PATTERSON, J. The plaintiff (respondent), having in his possession a fund, consisting of securities and the proceeds of securities placed in his hands under a certain trust, brought this action asking a judicial determination as to the ownership of the fund; that his account might be taken, and distribution awarded to or among those found entitled thereto. The justice at special term decided that the plaintiff, the defendant Flagler, the defendants Slocum and Kingsbury, and the defendant Grant, receiver, were entitled to the whole of the fund; and from an interlocutory judgment entered on such decision this appeal is taken.

Prior to October, 1893, the securities involved herein belonged to the American Casualty Insurance & Security Company, a Maryland corporation. About the 23d of November, 1893, that corporation being insolvent, the defendants Sharpe and Clark were appointed its receivers in the state of New York. On or about the 16th of November, 1893, the "securities," as they are for convenience called, were placed in the hands of the plaintiff by Gen. Slocum, who was then the president of the American Company; he having been elected to that position some time in the summer of 1893, as the succes-

sor of one Midgley. They were given into the possession of the plaintiff upon trust to hold them as collateral for an obligation or indebtedness of the American Company to the plaintiff and Arthur B. Graves, president of the St. Nicholas Bank, and Gen. Slocum and John H. Flagler. The nature and origin of this indebtedness is the important subject of inquiry to be made in this case. On the 21st of November, 1893, four promissory notes were made by the American Company. They were signed by Gen. Slocum, president, and R. K. Sheldon, treasurer, each for the sum of $15,000, each payable on demand, and each reciting that it was given for value received, was to draw interest at the rate of 6 per cent. per annum from October 28, 1893, and each stating that the company had "deposited with E. C. Converse collateral security for the protection of this note, and three others of like amount issued this day, with authority to sell the same at the brokers' board or at public or private sale, at his option, on the nonperformance of this promise, and without notice." It appears that in October and early in November, 1893, Converse, Graves, Flagler, and Slocum each advanced the sum of $15,000 to the American Company. The promissory notes above referred to related to those advances. Early in October it was ascertained that the company was in financial embarrassment. Its business had been conducted by the firm of Beecher, Schenck & Co., its general managers. Midgley, the president of the company, was a member of that firm. Slocum, Flagler, Graves, and Converse were directors of the American Company. The difficulties of the company largely arose from personal transactions of the general managers with it, in the course of which a very large indebtedness arose from them to it. In the months of October and November there was in contemplation a scheme or plan to relieve the company of its embarrassment, one feature of which, it is asserted, related to a subscription by the directors, or some of them, to pay the whole or some part of this debt of Beecher, Schenck & Co. At the same time the directors of the company, not knowing of the extent of its difficulties, or that it was actually and hopelessly insolvent, made efforts to relieve it from what they supposed to be only its temporary embarrassment. Gen. Slocum had assumed the presidency, but early in October he called a meeting of some of the directors at the office of Mr. Sewell, the general counsel of the company, and then and there declared that he would not continue in the position, unless a fund were raised by which the company's pressing obligations, which required immediate payment, could be provided for. As a result of the conference, four of the directors, including Gen. Slocum, agreed to loan $15,000 each, and the money was actually advanced between the 2d or 3d of October and the middle of November. It is claimed by the lenders that it was agreed at the time, and as part of their contract, that they should have security for their loans; and there is in the record a resolution of the directors of the American Company passed October 27, 1893, authorizing security to be given to those loaning money to protect the credit of the company. On the trial of this action the receivers of the American Company claimed the whole fund on the following grounds: First. That it

was shown by the proofs that the moneys advanced by the four parties named were so advanced as a subscription to the payment or reduction of the debt of Beecher, Schenck & Co., and as part of a general scheme of rehabilitating the company, and that the taking of the security subsequent to advancing the money was a mere subterfuge by which they could reimburse themselves; the company being hopelessly insolvent, and the appointment of receivers being inevitable. Second. That under such circumstances the four parties named, being directors of the company, could not secure to themselves an advantage by way of a preferential payment or security of the moneys so advanced, and that a court of equity will compel them to make restitution, and that, inasmuch as the question of ownership and right to the possession of the securities or their proceeds is involved in this case, the fund should be awarded to the receivers, as the representatives of the company. On the other hand, the plaintiff, the successors in interest of Gen. Slocum, the defendant Grant, receiver of the St. Nicholas Bank (who now stands in the place of, and represents the interest of, Graves), and the defendant Flagler, claim that they are entitled to the fund by virtue of a contract made at the time the money was advanced, that they should have security for it; that the security was given, and was part of the consideration upon which the loan was made; that the lenders acted in the whole transaction in good faith, and in an honest effort to relieve the company in its supposed temporary difficulties.

The claim of the receivers of the American Company is based, necessarily, on the proposition that Flagler, Graves, Converse, and Slocum, being directors of that company, could not so contract with it, or deal with its assets, as to secure an indebtedness to them to the prejudice and detriment of the creditors or stockholders of that corporation. The subject of their obtaining by their own acts a preference, in view of the insolvency or imminency of insolvency of the corporation, against the provisions of the general stock corporation law of New York, of course, is not before us, as this was a foreign corporation; but, nevertheless, it is true that a court of equity will scrutinize with extreme care all contracts made by directors of a corporation with themselves, and for their own benefit, and all transfers of property made to them by themselves as trustees, and may refuse to recognize such contracts, and set aside such transfers, under certain circumstances, in case they injure any public interest, or the private interest of any shareholder or creditor, even though the contract or transfer is executed in good faith. Skinner v. Smith, 134 N. Y. 241, 31 N. E. 911. But, as was said in Oil Co. v. Marbury, 91 U. S. 587, while it is true that a director of a corporation is bound by all rules of conscience and fairness which courts of equity have imposed as guides in dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation, when the money is needed, and the transaction is open and otherwise free from blame, and of taking the benefit of security for the payment of such loan. Kinsman v. Fisk, 83 Hun, 494, 31 N. Y. Supp. 1045. In many cases,

contracts by which personal advantages are secured to directors as part of the consideration of a contract, even honestly made, may, on repayment of what has been advanced, be set aside, as voidable, by the parties interested in the corporation (Duncomb v. Railroad Co., 84 N. Y. 190), but this is not such a case. The trial judge found (and he could not have done otherwise on the evidence) that the advances of money made by the four parties were not so made in view of any other purpose than to loan to the corporation a sum of money to pay urgent demands which it was necessary to pay, to maintain the credit of the company, and thus to preserve its business and assets for the benefit of the stockholders and of the creditors. We have no reason to doubt the statements that neither of these directors knew the actual condition of the company. It is not a question of remissness of duty on their part in acquainting themselves, as directors, with the condition of the company. If any injury has been suffered by the stockholders on that account, they have their common-law action for damages. This money was loaned by the four directors in the same way that any stranger might have loaned it, and the contract for security was an incident of, and connected with, that loan, and inseparable from it. There was no personal advantage in making the contract. It was altogether for the benefit of the company, and was rather disinterested than otherwise. None of the cases have gone so far as to hold that directors of a corporation may not with their individual funds make the effort to tide over a temporary embarrassment of the company, and to keep it solvent, and to continue a going business believed to be of great value, unless at the risk of a personal loss of their money legitimately used in that effort. In holding that a contract to take security for a loan thus made is not void, there is no violation of any rule of law or equity, it being fairly established that the transaction was purely of the character mentioned. It must be open and aboveboard,—plain and obvious in all its details; and, if it stands that test, the directors contracting taking no more than sufficient security for their loan, there is no violation of that duty (avoiding absolutely the contract) which agents occupying fiduciary relations owe to their principals, for in those relations the duties and obligations of directors to their corporation are to be found. The contract may be voidable, but restitution of the money loaned must be made, if that contract is to be avoided. Steinway v. Steinway, 2 App. Div. 304, 37 N. Y. Supp. 742, affirmed 157 N. Y. ——, — N. E. ——. The facts of this case are very plain on the record. The giving of security was part of the contract, and the loan was made upon the faith of it, and it was agreed from the beginning that the securities should be deposited in the hands of Mr. Converse, the plaintiff, as trustee for himself and the other lenders; and that security was not even adequate to cover the loan. The securities were not delivered into the trustee's possession until November, but there was a reason for it. He, being the appointee or depositary and trustee, was absent from the city of New York most of the time between the date of the meeting at Mr. Sewell's office and the 10th of November. On his return to New York, and about the 16th of

November, the certificates of stock (being the securities) were sent to him; but there was an informality in the powers of attorney annexed to them, and they were returned to Gen. Slocum, and, when the proper corrections were made, they were handed back to the trustee. The giving of the security was not an afterthought. It was not a taking of property of the company to secure an antecedent debt to the lenders of the money. It was all done in performance of one of the terms and conditions of the loan; and the whole transaction being honest, open, spread upon the books and records of the company, and made and intended for the direct advantage of the company, we think the court was right in its decision.

The interlocutory judgment should be affirmed, with costs. All concur.