ALDINE MANUFACTURING CO. *v.* PHILLIPS.

1. CORPORATIONS—DOUBLE AGENCY—VALIDITY OF CONTRACTS.
   Dealings between two corporations are not void because conducted on behalf of both by the same person, a stockholder and director in each, where the transactions were honest, and were known to the officials of both companies.[1]

2. SAME—EVIDENCE.
   Where, in a suit to set aside certain purchases of merchandise made by complainant's managing director, on its behalf, from another corporation in which he was a heavy stockholder, and to recover an alleged excess over the reasonable value of the goods, it appeared that such manager's connection with the latter corporation was known to complainant's officers, as was the fact that the purchases were being made, and it was also shown that no more than a reasonable profit was made on the sales, the court properly refused to disturb the transactions.

[1] As to contracts between corporations having common directors or officers, see note to *San Diego, etc., R. Co.* v. *Pacific Beach Co.*, (Cal.) 33 L. R. A. 788.

Appeal from Kent; Grove, J. Submitted October 23, 1901. Decided January 7, 1902.

Bill by the Aldine Manufacturing Company against James T. Phillips and the Grand Rapids Clock & Mantel Company for an accounting. From a decree dismissing the bill, complainant appeals. Affirmed.

The bill in this case alleges that complainant is a corporation engaged in the manufacture of what is known as the "Aldine Grate;" that the defendant the Grand Rapids Clock & Mantel Company is a corporation engaged in the manufacture of mantels; that Phillips is, and has been for several years, a stockholder of complainant, owning 298 shares, of the par value of $7,450; that Phillips was elected secretary and treasurer and general manager of complainant; that while such manager he also, on November 10, 1894, purchased an interest in the defendant corporation, and became a stockholder, director, and manager of it; and that from that time until about 1898 the complainant, through Mr. Phillips, purchased mantels for sale in connection with its grates from the defendant corporation, through Mr. Phillips, its manager or agent. These allegations are admitted, except that he was the manager of the defendant corporation, which is denied. The further claim in the bill is briefly and accurately stated in one of the briefs for defendants, as follows:

"1. That in November, 1894, the defendant Phillips conceived a plan to defraud complainant out of its profits by the purchase of the greater part of the capital stock of the Dryden-Annin-Rose Clock Company, by the amendment of such company's articles so as to have power to manufacture and sell mantels, and by selling the same to the complainant thereafter at excessive prices.

"2. That in May, 1895, defendant Phillips, with money drawn from complainant's treasury, purchased the remaining stock of the insolvent Widdicomb Mantel Company for $995, and resold such stock, so far as mantels were finished, to the complainant, for the sum of $2,875; that the defendant Phillips took from the complainant more

than $5,000 as the purchase price on the Widdicomb stock of mantels, and made a net profit thereon of $4,000.

"3. That the defendant Phillips paid the Grand Rapids Clock & Mantel Company excessive prices for its mantels, and far in excess of the prices charged by the Widdicomb Company; and that such excessive prices amounted to more than $2,750.

"4. That it has been the custom in the mantel trade to give 2 per cent. discount for cash, and also 15 per cent. discount on the sale of mantels, and that the defendant never gave complainant any discount, and that complainant is entitled to a cash discount of 2 per cent. on $54,-374.67, amounting to the sum of $1,087.49.

"5. That the defendant Phillips, as manager of both corporations, increased the prices of mantels sold to the complainant beyond the prices which the Widdicomb Mantel Company had sold to the complainant, and that the complainant is entitled to recover from defendants all increases in the prices of mantels, and the interest thereon.

"6. That the defendant Phillips used the traveling men of complainant to sell goods for the mantel company, although complainant paid their salaries and traveling expenses, and has never been reimbursed, and that complainant is entitled to be refunded 'an equitable proportion' of such salaries and expenses.

"7. That the mantel company claims a balance against the complainant upon an account of $290.54, but owes complainant many thousands of dollars over and above that sum, and that the defendant should be enjoined until an account can be had.

"8. That complainant has disputed claims against the Grote & Cheney Furniture Company, of Spokane, Wash., and the Art Furniture & Decorating Company, of New Orleans, which should be charged to the defendant Phillips.

"9. That 'through the devices and fraudulent practices of said Phillips,' hereinbefore set forth, the gains and profits of complainant were diverted from complainant to the mantel company.

"10. That the complainant's officers and directors, other than Phillips, ' were wholly ignorant of the various frauds and dishonest and inequitable practices' of the defendants."

These allegations are denied by the answer. The bill prays the following relief:

"1. An account of all transactions between the complainant and defendant corporations.

"2. That all bargains and sales between the two corporations be set aside.

"3. That defendants pay to the complainant all sums in excess of $995 received from sales of Widdicomb mantels.

"4. That all sums paid for mantels in excess of market value thereof be refunded.

"5. That all increase in price over Widdicomb mantel prices in the spring of 1895 be refunded.

"6. That all sums paid out for salaries and expenses to traveling salesmen of complainant, while employed in selling goods of the mantel company, be refunded."

*Butterfield & Keeney*, for complainant.

*Taggart, Denison & Wilson* (*John E. More* and *Crane, Norris & Drew*, of counsel), for defendants.

GRANT, J. (*after stating the facts*). The dealings between the Aldine Company and the mantel company are not void because Mr. Phillips was the agent or manager of both companies and negotiated the buying and selling. *Adams Mining Co.* v. *Senter*, 26 Mich. 73. This is a leading case upon the subject, and has been quoted with approval by this and other courts. No other case need be cited in affirmance of the doctrine. It is sought to distinguish that case and others from this, in that the agent in that case was not shown to have been pecuniarily interested in either corporation, while in this case Mr. Phillips was a stockholder in both corporations, his interest in the mantel company being greater than in the Aldine Company. This interest, however, does not render the contracts and dealings between the two absolutely void. When the transactions are open, honest, and fair, and known to the officials of both companies, they will be sustained. The courts view with jealousy the transactions of the man who stands in such a capacity, and will hold him to a strict account of his dealings. He must show that he has acted with clean hands, and, when

this is shown, the transactions will be sustained. *Booth v. Robinson*, 55 Md. 419; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587. Counsel for both sides cite many cases bearing upon this important branch of the law. The rule of law is well settled, and a long citation of authorities is unnecessary.

Did Phillips deal honestly and fairly in these transactions as the agent and manager of the complainant? Did he buy his stock in the mantel company and purchase mantels from it for the complainant for the purpose of defrauding complainant? The questions involved are purely those of fact. Proofs were taken in open court, and 34 days occupied in the hearing. Both parties were represented by very able counsel. Various witnesses upon each side are attacked by the other as unworthy of belief. The circuit judge, who saw the witnesses, and listened to the exhaustive arguments of counsel, after mature deliberation, held that Mr. Phillips had committed no fraud upon the complainant, but that his dealings with it were fair and honorable. We are satisfied with the conclusion he reached. All the transactions with the two companies were entered upon the books of the complainant. There was no attempt on the part of Mr. Phillips to conceal his connection with the mantel company. Mr. Adams, a nephew of the president, the bookkeeper of complainant, knew of Mr. Phillips' connection with the mantel company from the outset, and testified that he saw no attempt on the part of Mr. Phillips to conceal anything. Soon after Mr. Phillips purchased his first stock in the mantel company, its place of manufacture was moved to a building adjoining that of the complainant. Monthly settlements were made between the two companies. At or before Phillips bought one-third of the stock of the mantel company, he had asked Mr. Rathbone, president of the Aldine Company, to take an interest in it. In July, 1895, Mr. Phillips bought 260 shares of Mr. Annin. The complainant's directors knew that complainant was buying its mantels of the defendant. An-

nual reports were made showing these dealings, and the books were open to their inspection. Both Mr. Rathbone and Mr. Withey, vice-president and a director, knew of Mr. Phillips' interest in the defendant company. Mr. Withey testified that Mr. Rathbone was always objecting to Mr. Phillips' connection with the defendant company, and that the matter was discussed at the directors' meeting in January, 1896. Complainant's president testified that he supposed it was expected that complainant would get more or less of the mantels from the clock and mantel company. Ten per cent. was allowed the complainant on sales of mantels made by its agents. The record shows that only reasonable profits were made by the mantel company. The claim is made that mantels could have been bought cheaper from other manufacturers. This, however, is disputed, if the mantels of other companies were of the same quality and grade as those manufactured by the mantel company for the complainant. The testimony on the part of the defendants is very strong that they insisted upon and obtained a better grade of mantels than those which the witnesses for complainant testified could have been bought at cheaper rates. On several occasions complainant was not credited upon the books with the 10 per cent. allowed on sales of mantels. This was a purely clerical error on the part of the bookkeeper. The entire amount is only about $71, and is more than offset by mistakes made against the mantel company.

The briefs of counsel have of necessity been very long, containing 624 pages, and they have aided the court very materially in their method of discussion and the citations to the record. Were we to enter into a discussion of the facts, it would necessitate long and laborious work, which would be of no benefit to the profession as a precedent. We are satisfied with the conclusion reached by the circuit judge.

The decree is affirmed, with costs.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.