## In re CASTLE BRAID CO.

(District Court, S. D. New York. June 25, 1906.)

1. BANKRUPTCY—PROOF OF CLAIM—PROBATIVE EFFECT OF ALLEGATIONS.

The allegations of a proof of claim against an estate in bankruptcy are to be taken as true, and if they set forth the necessary facts, and are not self-contradictory, they establish the claim prima facie, even when objections are filed, and the burden of overcoming such prima facie case rests upon the objector.

2. SAME—CORPORATIONS—NOTES GIVEN TO OFFICER.

Where the proof of a claim against the estate of a bankrupt corporation sets out notes given by the corporation, and alleges that they were given for money lent by the payee to the corporation at its special instance and request, that they are wholly unpaid, and not secured in any way, the probative force of such allegations is not affected by the fact that the payee was an officer of the corporation when the notes were given, and in the absence of evidence in support of objections the claim should be allowed.

3. SAME—CONTRACT WITH DIRECTORS FOR PURCHASE OF STOCK.

A proof of claim against a bankrupt corporation set out a contract between the corporation and the claimants for the purchase by the corporation of the stock thereof held by claimants, who were at the time officers and directors. The contract was assented to by all of the stockholders, and recited that dissensions existed between the stockholders, and that the purchase was made to settle the same and terminate pending litigation, and, in consideration of the transfer of their stock by claimants, and their agreement not to enter into competing business for three years, they were to be paid a stated sum in installments. The proof alleged that the stock had been assigned and the conditions performed by claimants, and that the greater part of the payments had been made. Also, that claimants held certain securities for a portion of the remainder. *Held*, that such proof was sufficient to establish the claim prima facie; the contract being valid in the absence of proof that it was ultra vires or not made in good faith, or that the corporation was insolvent at the time.

4. CORPORATIONS—PURCHASE OF STOCK—NEW YORK STATUTE.

The provision of the stock corporation law of New York (Heydecker's Gen. Laws, p. 2906, c. 36, § 23), that no corporation shall pay dividends except from the surplus profits of its business, "nor divide, withdraw, or in any way to pay the stockholders, or any of them, any part of its capital stock," except in case of its dissolution and after its debts are paid, does not broadly prohibit a corporation from purchasing its own stock, and a contract for such purchase is not necessarily void as ultra vires.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1530.]

5. SAME—CONTRACT WITH DIRECTORS.

While the directors of a corporation are regarded in equity as trustees, and a contract between them and the corporation will be closely scrutinized, and set aside on slight evidence that it is fraudulent or detrimental to the interests of the corporation, such a contract is not void on its face merely because of the fiduciary relation between the parties which appears therein.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, 1401–1415.]

In Bankrutcy. Review of holding of referee that under the proofs of claims submitted herein, and the peculiar facts appearing therefrom and the objections thereto, both duly verified, the burden of proceeding with evidence in support of the claims is on the claimants, and consequently that the trustee, objecting, need not produce any evidence in support of the allegations of the objections filed.

James, Schell & Elkus, Abram I. Elkus, and Joseph M. Proskauer, for the trustee.

Sol Kohn (Louis Marshall, of counsel), for claimants.

RAY, District Judge. In due form the proof of claim of Meyer W. Schloss and Joseph W. Schloss, jointly, alleges:

"That the Castle Braid Company, the corporation against which a petition for adjudication of bankruptcy has been filed, was, at and before the filing of said petition, and still is, justly and truly indebted to said deponent and Joseph W. Schloss, jointly, in the sum of sixty-six thousand five hundred and sixty-two and 47/100 ($66,562.47) dollars and interest. That the consideration of said debt is as follows: That said corporation agreed with deponent and said Joseph W. Schloss, by agreement in writing bearing date the 30th day of March, 1904, which agreement is hereto annexed, to pay to deponent and Joseph W. Schloss the sum of one hundred and fifty-eight thousand one hundred and twenty-five ($158,125.00) dollars for their interest in the capital stock and in the assets of the said corporation, which interest was by said agreement duly transferred to the said corporation, and in further consideration of the performance by deponent and said Joseph W. Schloss of certain obligations therein set forth, which they have duly performed. That said sum was to be paid as follows: twenty-five thousand ($25,000.00) dollars on or about April 1, 1904, and five thousand one hundred and twenty 19/100 ($5,120.-19) dollars monthly thereafter until the balance of said sum should be fully paid. That no part of the said sum of one hundred and fifty-eight thousand one hundred and twenty-five ($158,125.00) dollars has been paid, except the sum of ninety-one thousand five hundred and sixty-two 47/100 ($91,562.47) dollars, leaving a balance due of sixty-six thousand five hundred and sixty-two 47/100 ($66,562.47) dollars."

Then follows a detailed statement of the dates when certain specified sums became due, and of the times when the other sums not due and payable would become due and payable. Then the claim continues:

"That no part of the said debt has been paid. That no note has been received for said debt, nor has any judgment been rendered thereon. That there are no offsets or counterclaims to the same. That the only security held by deponent and said Joseph W. Schloss, or either of them, for said debt is the following: The sum of ten thousand two hundred and forty 38/100 ($10,240.-38) dollars, which, as deponent and said Joseph W. Schloss claim, is held for their benefit by C. A. Auffmordt & Company, a copartnership in the borough of Manhattan, city of New York, and a certain mortgage, dated March 18, 1897, made by William J. Schloss, Henry W. Schloss, and Meyer W. Schloss for fifty thousand ($50,000.00) dollars, upon which there is now due and unpaid the sum of twenty-five thousand ($25,000.00) dollars and accrued interest, which deponent and said Joseph W. Schloss claim is also held for their benefit by the said C. A. Auffmordt & Company."

The agreement referred to in such proof of claim and thereto annexed, dated March 30, 1904, made between said claimants, parties of the first part, the Castle Braid Company, party of the second part, and Henry W. Schloss, party of the third part, recites that the parties of the first and third parts are "the owners of a large majority of the stock of the Castle Braid Company," and "are directors and officers thereof"; Henry W. Schloss being president, Joseph W. Schloss vice president, and Meyer W. Schloss treasurer. It also recites that:

"Serious differences have arisen between them regarding their respective interests in the said stock, and with reference to the management of the said corporation, which differences have resulted in litigation now pending between the parties hereto, and other litigation is apprehended, which differ-

145 F.—15

ences and litigation have greatly impaired the efficient conduct of the business of the said corporation, and threaten to cause great damage and loss to it."

And also:

"It is desired for the best interests of the party of the second part that the parties of the first part should dispose of their stock and all interest in the said corporation, and resign as directors and officers thereof, and agree not to engage in competition with the party of the second part of the period of three years in respect to the matters and things hereinafter set forth."

The said agreement then continues:

"Now therefore, in consideration of the premises and of one dollar ($1.00) by each of the parties hereto to the other in hand paid, the receipt whereof is hereby acknowledged, this agreement witnesseth: (1) The parties of the first part sell, assign, and transfer and set over to the party of the second part all their shares of stock, and all their right, title, and interest in and to the assets of the said Castle Braid Company and of Schloss & Sons. (2) The first parties agree to resign as officers and directors in said company. (3) The parties agree to discontinue all actions pending between them.. (4) The first parties agree not to compete with the company in the manufacture, etc., of certain specified things. (5) [Then follows the agreement of the second party to pay for the capital stock and other interests and things mentioned said sum of $158,125, in certain payments, as before mentioned.] (6) The second party agrees to pay certain moneys due the estate of one William J. Schloss. (7) The party of the third part agrees not to sell his stock until full payment is made to the first parties by second parties, and that until then he will continue to act as president of the company. (8) The second party agrees that it will not sell or dispose of the stock of the parties of the first part until it shall have fully paid the amount hereinbefore provided to be paid to the parties of the first part, save and except that it shall have the privilege of disposing of its treasury stock at not less than par, applying the proceeds towards the indebtedness of the party of the second part to the parties of the first part."

This agreement, duly witnessed and duly acknowledged, the acknowledgment of the company being in due form to comply with the laws of the state of New York, was signed by all the parties, and there was annexed thereto a written ratification and approval of same, signed by all the stockholders of said corporation. There is also annexed to the certificate of review made by the referee a duly verified claim made by Meyer W. Schloss against said company, bankrupt, based on three promissory notes of said company, signed "The Castle Braid Company by Henry W. Schloss, President," given for cash loaned to the company, it is alleged in said claim, and which notes, each for $5,000, were made March 31, 1905, April 3, 1905, and May 1, 1905, respectively, payable at 552 Broadway, New York, to the order of Meyer W. Schloss. Each of these notes is indorsed by said Henry W. Schloss individually. This poof of claim is in due form, and states that such notes are due and have not been paid, or any part thereof, and that there are no offsets or counterclaims thereto, and that "deponent has not, nor has any person by his order, or to his knowledge or belief, for his use, had or received any manner of security·for said debt whatever." The notes, and also copies thereof, are attached to and filed with the claim. Meyer W. Schloss, the payee of the note, was in fact treasurer of the Castle Braid Company, the maker of the note, but this fact does not appear in the proof of claim. The proof says:

"That the said notes were given for cash loaned at the time of the respective dates of said notes by deponent (Meyer W. Schloss) to the corporation at its special instance and request; that no part of said debt has been paid, nor has any judgment been rendered thereon."

The objections filed to the claim of Meyer W. Schloss and Joseph W. Schloss are: (1) Deny that there is any money due or owing on said claim. (2) Object that it appears on the face of the claim that securities are held for the payment of the debt alleged, and that the securities must be liquidated and their value determined before the allowance of the same. (3) Object that within four months prior to the filing of the petition in bankruptcy certain moneys ($10,000, or more) were paid to the claimant under such circumstances as to constitute a preference, and the claimants must surrender their preferences before their claims can be allowed. (4) That the contract being one between the corporation and its officers and directors, as stated, they (claimants) "were prohibited from making a contract with the corporation of which they were directors which would operate to their individual advantage. That the said contract was void on this account, and no moneys are due thereon." (5) Objects that the contract is void and of no effect. That "at the time of the making of said contract there was no surplus from which the said Castle Braid Company could purchase its own stock," and, also, that when the various sums agreed to be paid became due there was no surplus from which same could be lawfully paid, or purchase its own stock, and that from the date of the contract to the date of the filing of the petition in bankruptcy there was no surplus in the treasury of the corporation from which any of its own stock could be purchased, and therefore said contract was wholly void. (6) Objects, in substance, that the payments made and turning out of security as alleged was part of, and done in pursuance of, a fraudulent scheme to hinder, delay, and defraud the creditors of the corporation, the Castle Braid Company, now bankrupt. (7) Objects, in substance, that there is now pending and undetermined in the Supreme Court of the state of New York an action brought by one Emanuel W. Bloomingdale, as receiver of the said bankrupt corporation, against Henry W. Schloss, Meyer W. Schloss, Joseph W. Schloss, et al., to recover of them about $200,000 "as an indemnity for the damages suffered by the bankrupt corporation by virtue of dealings between the said corporation and the defendants in said action, and that the moneys recovered in said action would and should be a counterclaim to any moneys payable as a dividend on the claim of claimant if allowed. (8) Objects, in substance, that the claim is without merit, and no obligation to pay exists, and claimants are in fact debtors of the bankrupt corporation. All these material allegations and objections are made on information and belief except so far as they appear from the contract or agreement itself, which is attached to the proofs of claim.

The claim of Meyer W. Schloss on said notes is objected to on the grounds: (1) That there is no money due thereon. (2) That within four months the corporation paid claimant more than $10,000 cash when it was insolvent, under such circumstances and with such knowledge in the claimant that such payment constituted a preference, and same must be surrendered before the claim can be allowed or any divi-

dend paid. (3) The pendency of the action brought by Bloomingdale, as before set forth in the objections to the claim on the contract, etc. It is not necessary to repeat same here. (4) That the moneys claimed to have been loaned to the corporation by Meyer W. Schloss were moneys received by him from certain securities transferred by the Castle Braid Company to Meyer W. Schloss and Joseph W. Schloss jointly. That the transfer of said security to them was in fraud of creditors and void and of no effect, and that such money, so loaned, is the property in fact of the trustee in bankruptcy, and also certain other moneys derived. from said securities in the hands of said Schloss or both of them. (5) That such claim is without merit, and the bankrupt corporation owes. nothing to claimant, but, on the other hand, claimant is largely indebted to said corporation, its trustee in bankruptcy.

The material allegations of the objections to this claim are on information and belief.

It is settled in Whitney v. Dresser, 200 U. S. 532–535, 26 Sup. Ct. 316, 50 L. Ed. ——, citing and approving In re Sumner (D. C.) 101 Fed. 224; In re Shaw (D. C.) 109 Fed. 780; In re Cannon (D. C.) 133 Fed. 837; In re Carter (D. C.) 138 Fed. 846; In re Doty, 5 Am. Bankr. Rep. 58; In re Saunders, 2 Lowell, 444, 446, Fed. Cas. No. 12,371; In re Felter (D. C.) 7 Fed. 904–906—in substance, that the allegations of the proofs of claim are to be taken as true. If they set forth all the necessary facts to establish a· claim, and are not self-contradictory, prima facie, they establish the claim, even in the presence of objections, and the objector is then called upon to produce evidence and show facts tending to defeat the claim of probative force equal to that of the allegations of the proofs of claim. The burden of proof is always on the claimant, but, as probative force is given to the allegations of the proofs of claim, and no probative force is given to the objections, this must be met, overcome, or at least equalized, by the objecting party. In short, if the proofs of claim state facts sufficient to make a prima facie case, and it is stated that there is no security, the referee is bound to allow the claim, unless evidence controverting such facts is given by the objecting party, or an offset or counterclaim thereto is proved or established, or it appears that security is held for the claim. If the claim is secured, and the contract itself does not fix the mode of ascertaining the value of such security, the court must first ascertain its value in one of the modes prescribed by law before it can be allowed. In such case the claim can be allowed for the balance only. See section 57 of the act of July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443].

The question is therefore reduced to this, do these proofs of claim on their face state facts which, admitted to be true, make out the claim in favor of the claimants?

As to the claim on the notes, the proofs thereof show that the note was given by the corporation to one who was one of its officers, and, in the absence of an allegation to the contrary, it might be assumed possibly, that they were used to satisfy some demand of, or for the personal benefit or use of, an officer of the corporation. See cases cited. In re Troy & Cohoes Shirt Company (D. C.) 136 Fed. 420, affirmed

by Circuit Court of Appeals, 142 Fed. 1038. But the claim unequiv-
ocally says the notes were given for money loaned by the payee of the
notes to the corporation at its special instance and request, and that it
is not secured in any way. Therefore, there is no fact stated in the
proofs of claim on the notes that in any degree impairs the probative
force of the allegations therein contained. I know of no rule of law
that prohibits such a corporation as this was from borrowing money
of one of its officers, and giving its note therefor, or that makes such
a note invalid. As the verified objections have no probative force, I
do not see that there is any burden to proceed with the proof of this
claim on the notes resting on the claimant. There is no admission any-
where that it is a secured claim, or that any preferential payment has
been made thereon or received by the claimant. Such facts cannot be
assumed to exist because alleged by the objecting party. If shown to
exist, then the amount and value of the security in the one case is to be
ascertained and deducted, and the claim allowed for the balance only,
and in the other the amount of the preference when ascertained must
be surrendered to the trustee as a condition of allowing the claim and
before it can be allowed. See sections 56 and 57 of the act of July 1,
1898, c. 541. 30 Stat. 560 [U. S. Comp. St. 1901, pp. 3112, 3443].

It is unquestionably true that the trustee is at liberty to call the claim-
ant if necessary, and subject him to a most rigid examination—one in
the nature of a cross-examination—but in the face of the decision in
Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. ——, and
of the absence of any provision in the law requiring a claimant to show
affirmatively, otherwise than in his proof of claim, that his debt is not
secured, or that he has not received a preference (and this he is not
required to state in his proofs), I do not see that as to the claim on the
notes any burden of proceeding rests on the claimant, and it is so held.

In regard to the claim of Meyer W. Schloss and Joseph W. Schloss
jointly on the contract or agreement in question, I am of the opinion
that, under subdivision "h" of section 57 of the bankruptcy act, the mode
of ascertaining the value of the securities held by the claimants (the
mode not being fixed by any agreement between the parties in interest)
is discretionary with the court. But this does not affect the general and
broader question as to whether or not the burden of proceeding to
prove their claim rests now upon the claimants. There is nothing sus-
picious about the claim in itself, except its general nature and the re-
lations of the parties. The facts are stated plainly, and without at-
tempt at concealment or evasion, so far as can be discovered. The
contract was approved by all the stockholders, and recites several con-
siderations for the covenants and agreements therein contained.
Claimants' proofs allege that they have fully performed the agreement
on their part, that the corporation accepted the benefits to be derived
from performance, and partly performed on its part; and from the
recitations in the agreement it appears, prima facie, at least, that the
agreement at the time made was a wise and beneficial one. It has not
been made to appear that any fraud or deceit was practiced, or that
the contract was in fraud of or prejudicial to the then existing creditors
of the corporation. On the other hand, to settle disputes and litiga-

tions would appear beneficial.    While at law the directors of a corporation are regarded as its agents in equity, they are deemed to be trustees, and are treated as such.    "The directors of a corporation are subject to the obligations which the law imposes upon trustees and agents. They cannot, therefore, with respect to the same matters, act for themselves and for it, nor occupy a position in conflict with its interests." Wardell v. Railroad Co., 103 U. S. 651–658, 26 L. Ed. 509; Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667; McGourkey v. Toledo & Ohio Railway, 146 U. S. 536–552, 13 Sup. Ct. 170, 36 L. Ed. 1079.    In this case, at page 552 of 146 U. S., page 175 of 13 Sup. Ct. (36 L. Ed. 1079), the court said:

"Indeed, the business of manufacturing rolling stock, and loaning it to railways which have not a sufficient capital to purchase a proper equipment of their own has become a recognized industry.  If, however, such contracts are made by directors of the road with themselves, or with others with whom they stand in confidential relations, they are open to the suspicion which ordinarily attaches to transactions between a corporation and its directors; and if they appear to have been made directly or indirectly for their own benefit, courts will refuse to give them effect.  Drury v. Cross, 7 Wall. (U. S.) 299, 19 L. Ed. 40; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Wardell v. Railroad Company, 103 U. S. 651, 658, 26 L. Ed. 509."

It is seen that it must be made to appear that such a contract is made for the benefit of the officers or directors.    See generally Wald's Pollock on Contracts (3d Ed.) 387, and note.    See, also, Sage v. Culver, 147 N. Y. 241, 41 N. E. 513.    Numerous other cases might be cited, but it is not necessary.

In Wardell v. Railroad Co., supra, at page 658 of 103 U. S. (26 L. Ed. 509), it was said by Mr. Justice Field in giving the opinion of the court:

"It is among the rudiments of the law that the same person cannot act for himself and at the same time, with respect to the same matter, as the agent of another whose interests are conflicting.  Thus a person cannot be a purchaser of property, and at the same time the agent of the vendor.  The two positions impose different obligations, and their union would at once raise a conflict between interest and duty; and, 'constituted as humanity is, in the majority of cases duty would be overborne in the struggle.'  Marsh v. Whitmore, 21 Wall. (U. S.) 178, 183, 22 L. Ed. 482.  The law, therefore, will always condemn the transactions of a party on his own behalf when in respect to the matter concerned he is the agent of others, and will relieve against them whenever their enforcement is seasonably resisted.  Directors of corporations, and all persons who stand in a fiduciary relation to other parties, and are clothed with power to act for them, are subject to this rule.  They are not permitted to occupy a position which will conflict with the interest of parties they represent and are bound to protect.  They cannot, as agents or trustees, enter into or authorize contracts on behalf of those for whom they are appointed to act, and then personally participate in the benefits.  Hence, all arrangements by directors of a railroad company to secure an undue advantage to themselves at its expense, by the formation of a new company as an auxiliary to the original one, with an understanding that they, or some of them shall take stock in it, and then that valuable contracts shall be given to it, in the profits of which they, as stockholders in the new company, are to share, are so many unlawful devices to enrich themselves to the detriment of the stockholders and creditors of the original company, and will be condemned whenever properly brought before the courts for consideration. Great Luxembourg Railway Co. v. Magnay, 25 Beav. 586; Benson v. Heathorn, 1 Y. & Col. C. C. 326; Flint & Pere Marquette Railway Co. v. Dewey, 14

Mich. 477; European & North American Railway Co. v. Poor, 59 Me. 277; Drury v. Cross, 7 Wall. (U. S.) 299, 19 L. Ed. 40."

In Bosworth, etc., v. Allen, supra, it was held:

"The directors of a corporation, while not technically trustees thereof, as the title of the corporate property is vested in the corporation itself, are charged with the duties of trustees, and bound to care for its property and manage its affairs in good faith; and for a violation of that duty, resulting in waste of assets, injury to its property, or unlawful gain to themselves, they are liable to account in equity to the corporation or its representatives, the same as ordinary trustees."

In Wald's Pollock on Contracts (3d Ed.) p. 386, in introducing the subject, it is said:

"If an agent deals on his own account in the business of the agency without first obtaining the consent of his principal, and acquainting him with all material circumstances which have come to his own knowledge on the subject, the principal may repudiate the transaction."

Here all directors and stockholders consented, and in the absence of proof to the contrary it may be assumed and presumed that the facts are correctly recited in the agreement. The trustee in bankruptcy represents the creditors of the bankrupt corporation, but it is not made to appear that any of the creditors who were such at the date of the bankruptcy were creditors when the contract was made, or that the corporation was then insolvent, or that the stock was not worth all that was agreed to be paid therefor. The contract was made March 30, 1904. The petition in bankruptcy was filed in September, 1905, about 18 months thereafter. The court cannot indulge in any presumption of insolvency at a prior date, or that the agreement was in fraud of or even prejudicial to creditors existing at the time of its execution, or that the officers, directors, and stockholders were acting for any purpose other than the best interests of the corporation and its creditors, if any, or in violation of law.

In Lorillard v. Clyde, 86 N. Y. 384, Andrews, J., said:

"The presumption is in favor of the legality of contracts. The law does not assume an intention to violate the law, nor will an agreement be adjudged to be illegal where it is capable of a construction which will uphold it and make it valid."

See, also, cases hereafter cited.

It is urged that the contract was void and unauthorized for the reason that the corporation (a New York corporation) was prohibited by statute from purchasing its own stock except out of its surplus. I assume that section 23 of the stock corporation law of the state of New York (article 2, c. 36, p. 2906, Heydecker's General Laws of New York) is referred to and relied on. That section, as amended, reads as follows:

"Sec. 23. Liability of Directors for Making Unauthorized Dividends.—The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law. In case of any violation of the provisions of this section, the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at

large upon the minutes of such directors at the time, or were not present when the same happened, shall jointly and severally be liable to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or its creditors respectively by reason of such withdrawal, division or reduction. But this section shall not prevent a division and distribution of the assets of any such corporation remaining after the payment of all its debts and liabilities upon the dissolution of such corporation or the expiration of its charter; nor shall it prevent a corporation from accepting shares of its capital stock in complete or partial settlement of a debt owing to the corporation, which by the board of directors shall be deemed to be bad or doubtful."

This section primarily relates to the making of dividends, and expressly limits the payment thereof to the "surplus profits arising from the business of such corporation." It then provides that the directors shall not "divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law." In conclusion it says:

"But this section shall not prevent a division and distribution of the assets of any such corporation * * * nor shall it prevent a corporation from accepting shares of its capital stock in complete or partial settlement of a debt owing to the corporation, which by the board of directors shall be deemed to be bad or doubtful."

Does this section broadly forbid the purchase by the corporation of its shares of stock held by its directors? Clearly not, if the transaction is fair and honest, and in the interest of such corporation, and not of the selling directors, and therefore not offensive to the law under the cases cited. But the directors shall not "in any way pay to the stockholders, or any of them, any part of the capital of such corporation," and by the concluding words of the section this is not to "prevent a corporation from accepting shares of its capital stock in complete or partial settlement of a debt owing to the corporation," and deemed bad or doubtful. By implication it may forbid the purchase of any property of any description from the stockholders, and the payment therefor from the capital of the corporation; that is, from any fund except the surplus. The prohibition, if it applies to purchases of property, applies no more to a purchase of stock than to any other thing of value. The purchase of the stock of the corporation by the corporation from the stockholders is not prohibited or forbidden, but payment therefor from the capital may be and possibly is. That question is not necessarily here for decision.

In 2 Purdy's Beach on Private Corporations, at pages 1284 and 1285, it is said:

"The doctrine that corporations, when not prohibited by their charters, may buy and sell their own stocks is supported by a respectable line of authorities; and the rule appears to be well settled in the United States that a corporation may, unless prohibited by statute, purchase its own stock, or take it in pledge or mortgage; that it may purchase its own stock in exchange for money or other property, and hold, reissue, or retire the same, provided such act is done in entire good faith, is an exchange of equal value, and is free from all fraud, actual or constructive, provided that the corporation is neither insolvent nor in process of dissolution, and that the rights of creditors are not injuriously affected."

This is the rule in New York, Massachusetts, Illinois, Georgia, Iowa, Vermont. See cases cited, note 67, p. 1284, 2 Purdy's Beach on Private Corporations, supra.

In the City Bank of Columbus v. Bruce & Fox, 17 N. Y. 507, it is held:

"In the absence of prohibition by statute, a corporation may purchase its own stock, hold it unextinguished, and reissue same."

In Joseph as Trustee in Bankruptcy, etc., v. Raff, 82 App. Div. 47, 81 N. Y. Supp. 546, affirmed 176 N. Y. 611, 68 N. E. 1118, it was held:

"A corporation which expected to receive its principal revenue from a book in course of publication found itself unable to pay its current obligations in cash as they became due. It was then decided to elect as president of the corporation a person who had agreed that he and his friends would subscribe for capital stock to the extent of $300,000. In order to permit this plan to be perfected, the board of directors of the corporation entered into an agreement with the then president thereof, which provided that, in consideration of the tender by the latter of his resignation as president and director, the corporation would purchase his stock for a certain sum in cash; that it would also give him notes for the amount of the salary due to him, and other notes for a certain amount as liquidated damages for the termination of his contract of employment. The agreement was made in entire good faith, and in the honest belief that the corporation was solvent, and would be able to continue business. Five months after the consummation of the agreement, a petition in bankruptcy was filed by the corporation, and a trustee of its property was appointed, who brought an action to set aside the agreement. Held, that the agreement was valid; that, under the circumstances, the corporation might purchase its own stock with the purpose of immediately reissuing it; that, even were the purchase illegal, the corporation would be estopped to repudiate it, when it was not able to restore the vendor to the position he was in before the sale."

It is true, however, that this was a New Jersey corporation.

In 7 Am. & Eng. Encyc. of Law, p. 818, it is said, citing a large number of cases in many states:

"There is nothing in the nature of a corporation that renders it absolutely incapable of holding or dealing in its own stock," etc.

In the case now before this court it does not appear that there was not a surplus at the time the contract was entered into. It appears that there were good and valuable considerations for the agreement to pay, as specified, other than the transfer of the stock, viz., the discontinuance of certain actions, the transfer of interests in the firm of Schloss & Sons, the agreement not to manufacture articles in competition with the company. Nevertheless, it comes back to the propositions, does the section of the stock corporation law quoted prohibit the payment to a stockholder for any good and valuable consideration (such as property sold to it by the stockholder) any money from the capital, and, if so, must the claimant show affirmatively there was a surplus from which to pay when the agreement was made? It seems clear to me that there is no presumption or legitimate inference to be drawn from any fact appearing that the parties contemplated payment in violation of law, or that there was no surplus with which to discharge the obligations of the contract. As the corporation had the benefit of full performance by the claimants, and there has been no rescission or restoration or offer to restore, and no fraud or unfairness is apparent on the face of the contract, it seems clear a valid claim,

prima facie, is made out by the proofs, and that the burden of proceeding in the contest, not of proof, now rests on the trustee contesting. The authorities are that way.

In Railway Co. v. McCarthy, 96 U. S. 258, at page 267 (24 L. Ed. 693), the court said:

"Where a contract is not on its face necessarily beyond the scope of the power of the corporation by which it was made, it will, in the absence of proof to the contrary, be presumed to be valid. Corporations are presumed to contract within their powers."

To same precise effect, Express Co. v. Railroad Co., 99 U. S. 199 (25 L. Ed. 319):

"The contract⁹ of a corporation is presumed to be infra vires until the contrary is made to appear."

In Union Water Co. v. Murphy's Flat Fluming Co. et al., 22 Cal. 621, it is held:

"A contract by a corporation, which is not upon its face necessarily beyond the scope of its authority, will, in the absence of proof, be presumed to be valid."

In Chautauqua County Bank v. Risley, 19 N. Y. 369, 75 Am. Dec. 347, the court held:

"The dealings of a corporation which apparently are consistent with its charter are not to be regarded as illegal and unauthorized without evidence tending to show that they are of such a character."

And at page 381, of 19 N. Y. (75 Am. Dec. 347), the court said:

"The dealings of a corporation, which on their face or according to their apparent import are within its charter, are not to be regarded as illegal or unauthorized without some evidence tending to show that they are of such a character. In the absence of proof, there is no legal presumption that the law has been violated. On the contrary, these artificial bodies, like natural persons, are entitled to the benefit of the rule which imputes innocence rather than wrong to the conduct of men."

See, also, De Groff v. American Linen Thread Co., 21 N. Y. 124, and opinion at page 127; also, Safford v. Wyckoff, 4 Hill (N. Y.) 442, and the observation of Chancellor Walworth, which is quoted with approval in 19 N. Y. at page 382 (75 Am. Dec. 347):

"Where a corporation is authorized to give a negotiable security for any purpose, and there is nothing to show for what the particular security was given, if there is nothing on the face of the instrument itself to create a suspicion that it was issued for an illegal object, the court will presume that it was given for a legitimate purpose, rather than for one which was unauthorized and illegal."

It is true that it will require but little evidence of unfairness or of fraud to shake such a claim, resting, as it does, upon a contract between the corporation and some of its own directors and managing officers; but it seems clear to the court that, in the absence of all evidence to impeach the fairness of the contract, the claimants may safely rely upon the proofs presented. However, it must be borne in mind that the law looks with a watchful eye upon such a transaction—one between those having the management of a corporation, being directors therein, and occupying a position of trust and confidence, and the

corporation itself—especially where such directors are to be benefited in any way, and where, as here, the rights of general creditors are involved. Twin-Lick Oil Co. v. Marbury, 91 U. S. 588, 589 (23 L. Ed. 328), where it is said:

"That a director of a joint-stock corporation occupies one of those fiduciary relations where his dealings with the subject-matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, and which has received the clearest recognition in this court and in others. Koehler v. Black River Falls Iron Co., 2 Black. (U. S.) 715 [17 L. Ed. 339]; Drury v. Cross, 7 Wall. (U. S.) 299 [19 L. Ed. 40]; Luxemburg R. R. Co. v. Maquay, 25 Beav. 586; The Cumberland Co. v. Sherman, 30 Barb. (N. Y.) 553; Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co., 16 Md. 456 [77 Am. Dec. 311]. The general doctrine, however, in regard to contracts of this class is not that they are absolutely void, but that they are voidable at the election of the party whose interest has been so represented by the party claiming under it. We say this is the general rule, for there may be cases where such contracts would be void ab initio; as when an agent to sell buys of himself, and by his power of attorney conveys to himself that which he was authorized to sell. But, even here, acts which amount to a ratification by the principal may validate the sale."

See, also, Risley v. Indianapolis, B. & W. R. Co., 62 N. Y. 248; Barnes v. Brown, 80 N. Y. 536; Munson v. Syracuse, G. & C. Ry. Co., 103 N. Y. 73, 8 N. E. 355; Barr v. N. Y., Lake Erie, etc., R. Co., 125 N. Y. 263, 26 N. E. 145. Aldine Manufacturing Co. v. Phillips, 129 Mich. 240, 88 N. W. 632, is also in point.

The question submitted is therefore answered, that the burden of proceeding now rests upon the trustee contesting, and not upon the claimants.