BEACH v. McKINNON et al.

(Circuit Court, S. D. New York.    November 26, 1906.)

CORPORATIONS—CONTRACTS WITH DIRECTORS—IMPEACHMENT.

A bill by the receiver of an insolvent corporation against a promoter and subsequently a director of the corporation for a discovery and an accounting with respect to certain promissory notes, payable to the corporation and alleged to have been transferred by it to defendant, does not state a cause of action, where it fails to allege, even on information and belief, that the transfer was fraudulent or without full consideration, but merely that the notes were and remained the property of the corporation, without stating any facts to sustain such allegation; such transfer not being, prima facie, either invalid or fraudulent because of the fiduciary relation between the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1401.]

In Equity.    Demurrer to bill seeking discovery and accounting as to certain moneys collected on certain notes given to the International Mercantile Agency, of which the complainant is receiver, and also as to certain promissory notes made payable to said mercantile agency. One of the grounds of demurrer is that the bill is without equity, and another, that the bill does not state a cause of action against the defendant.

Rose & Putzel, for complainant.

Frank L. Crocker, pro se.

RAY, District Judge.    The complainant, George R. Beach, is the duly appointed receiver of the International Mercantile Agency, a body corporate created by and lately existing under the laws of the state of New Jersey.    The defendant McKinnon is a resident and citizen of the province of Ontario in the Dominion of Canada.    The defendant Crocker is a citizen and resident of the state of New York.    The amount involved is upwards of $100,000.    The International Mercantile Agency was a New Jersey corporation, and McKinnon was one of its promoters, and later became one of its directors and a member of the executive committee of the board of directors, and continued as such down to the time of the dissolution of the corporation and the appointment of the complainant as receiver thereof.    September 6, 1904, the said International Mercantile Agency was duly adjudged to be insolvent by the Court of Chancery of the state of New Jersey, and said court issued an injunction restraining said corporation from further exercising its corporate franchises, and appointed the complainant receiver of all its property.    The complainant has qualified as such and entered on the discharge of his duties.    April 13, 1905, said court made another decree dissolving said corporation pursuant to the general corporation act of the state of New Jersey.    By virtue of these proceedings title to all the property of said mercantile agency passed to the receiver.    These facts are fully set out in the bill of complaint.    The bill of complaint further states that in the course of its business said corporation from time to time received, on the sale of its stock and otherwise, promissory notes and drafts and bills receivable of a large amount, payable to the order of said corporation; that certain of these said McKinnon procured

the officers of said corporation to indorse over to him, and procured said officers to collect others of same and pay the proceeds thereof to Mc-Kinnon. The aggregate value of these so indorsed over and collected is alleged to be upwards of $50,000. There is no allegation in the bill of complaint that these notes, checks, and bills were so indorsed over to McKinnon without full and adequate consideration, duly received, or by means of fraudulent conduct, representations, or statements. There is no allegation that the proceeds of the notes, bills, and checks collected were paid over without full consideration or through fraudulent representations or conduct. The bill of complaint further alleges that about July 1, 1904, and when the corporation was in financial difficulty to the knowledge of McKinnon, he procured certain officers or employés of the corporation to indorse and deliver to him certain other promissory notes belonging to said corporation, of the aggregate value of over $50,000, and also other notes, not specifically named, the details of which are unknown. As to these notes the bill of complaint says:

"That said notes were, however, the property of said agency and in equity so continued to be until the appointment of your orator as receiver, as hereinafter set forth, since which time your orator has succeeded to the rights of the corporation therein. That your orator is unable to ascertain upon what terms, conditions, or consideration said McKinnon obtained said notes, and therefore charges that the said defendant is bound to make discovery therefor and account to your orator for said notes as the property of said International Mercantile Agency."

There is no charge or allegation that these notes were indorsed over to McKinnon without full and adequate payment therefor, without full consideration paid, through fraudulent practices or conduct or representations, or that they were so turned over as collateral security or upon any trust. There is no allegation that the complainant has any knowledge or information sufficient to form a belief to the effect that any of these notes mentioned in the complaint, or that any of the proceeds of notes, etc., mentioned in the bill of complaint, were so indorsed over and delivered, or that any of the money was paid over, without full consideration, or through any fraudulent misconduct or representations, or as security. We have the bare statement that the said property, referring to the notes last mentioned, continued to be the property of the mercantile agency in equity until the appointment of the receiver. No fact is alleged tending in any way to show that this is so. The bill further states, in substance, that these bills, checks, and notes have been delivered to the defendant Crocker, and that he is proceeding to collect the same on behalf of McKinnon, who is now traveling in Europe.

It seems clear to this court that the bill of complaint is fatally defective in not alleging, at least upon information and belief, that these promissory notes, drafts, and bills receivable, and the moneys collected and received, were so indorsed over and transferred without full consideration, or fraudulently, or as security, or in some way or under some arrangement tending to show that the receiver is either in fact the owner or has an equitable ownership therein. If the details of the transaction complained of are unknown, there can be general allegations inserted in the bill, accompanied by a statement that the details of the

transaction are unknown to the complainant. I do not think a prima facie case is made by merely alleging that McKinnon was one of the original promoters of the corporation, and became a director thereof and a member of the executive committee of the board of directors, and that he continued to occupy these positions until the dissolution of the corporation, and that while he occupied such position the notes, drafts, bills, and money were indorsed and passed over to him. There is no allegation that under the laws of the state of New Jersey such a transaction is void or voidable, nor is there any allegation that under the laws of the state of New Jersey such a transaction is forbidden. Clearly, under the laws of the state of New York, and under the law as applied by the courts of the United States, a corporation may transfer its property to a director, provided it is done fairly and honestly, without fraud, and for a full and adequate consideration, and for the benefit of the corporation. There is no allegation here to the contrary, and no presumption arises against the fairness of the transaction. Where such transfers are made, it requires but little evidence to overthrow the transfer; but the transaction is not prima facie invalid or fraudulent.

In re Castle Braid Co., Southern District of New York (D. C.) 145 Fed. 224, I recently held, after an examination of the authorities which are there cited, that:

"While the directors of a corporation are regarded in equity as trustees, and a contract between them and the corporation will be closely scrutinized, and set aside on slight evidence that it is fraudulent or detrimental to the interests of the corporation, such a contract is not void on its face merely because of the fiduciary relation between the parties which appears therein."

In Twin-Lick Oil Co. v. Marbury, 91 U. S. 588, 589, 23 L. Ed. 328, it is said:

"That a director of a joint-stock corporation occupies one of those fiduciary relations where his dealings with the subject-matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, and which has received the clearest recognition in this court and in others. Koehler v. Black River Falls Iron Co., 2 Black (U. S.) 715, 17 L. Ed. 339; Drury v. M. & S. R. Co., 7 Wall. (U. S.) 299, 19 L. Ed. 40; Luxemburg R. R. Co. v. Maquay, 25 Beav. 586; The Cumberland Co. v. Sherman, 30 Barb. (N. Y.) 553; Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co., 16 Md. 456, 77 Am. Dec. 311. The general doctrine, however, in regard to contracts of this class, is, not that they are absolutely void, but that they are voidable at the election of the party whose interest has been so represented by the party claiming under it. We say this is the general rule, for there may be cases where such contracts would be void ab initio, as when an agent to sell buys of himself, and by his power of attorney conveys to himself that which he was authorized to sell. But, even here, acts which amount to a ratification by the principal may validate the sale."

The following cases also throw light on the subject: Risley v. Indianapolis, B. & W. R. Co., 62 N. Y. 248; Barnes v. Brown, 80 N. Y. 536; Munson v. Syracuse, G. & C. Ry. Co., 103 N. Y. 73, 8 N. E. 355; Barr v. N. Y., Lake Erie, etc., R. Co., 125 N. Y. 263, 26 N. E. 145; Aldine Manufacturing Co. v. Phillips, 129 Mich. 240, 88 N. W. 632.

The demurrer is sustained, but with leave to the complainant to amend on payment of taxable costs of the demurrer within 20 days after service of a copy of the order sustaining the demurrer.